FRANK L. RAMACCIOTTI, Plaintiff-Appellant, *v.* JOE SIMPKINS *et al.,* Defendants-Appellees.

(No. 11019; 

Fourth District—December 23, 1970.

Gillespie, Burke & Gillespie, of Springfield, (Hugh J. Dobbs, of counsel,) Denby and Dobbs, of Carlinville, (Stuart Dobbs, of counsel,) for appellant.

Hershey, Bliss & Beavers, of Taylorville, (Charles E. Bliss, of counsel,) Craig & Craig, of Mt. Vernon, (Howard W. Campbell, of counsel,) for appellees.

Mr. JUSTICE WRIGHT delivered the opinion of the court:

This is a suit in equity instituted in the circuit court of Sangamon County, Illinois, and heard by the court without a jury upon the complaint as amended, and the answer and special defenses of the defendant,

Simpkins. An interpleader was filed by the Ashland Oil and Refining Company.

The plaintiff, Frank L. Ramacciotti, seeks to have a constructive trust established in certain interest of the defendant, Joe Simpkins, in oil lands located in the tri-state oil basin located in Illinois, Indiana and Kentucky, particularly in the interest of defendant Simpkins in the lands leased by him from the Peabody Coal Company in the Kincaid Pool in Christian County, Illinois, and seeks an accounting by the defendants, Joe Simpkins and Ashland Oil and Refining Company.

The plaintiff claims an equitable interest in one-half of the working interest obtained and retained by the defendant Simpkins in the oil property here in question.

The plaintiff predicates his claim upon the existence of either:

(1) An oral oil leasing partnership agreement general in scope entered into between plaintiff and defendant in the late spring or summer of 1950 and applicable to the working interest obtained by Simpkins in oil leases on lands in the tri-state basin for which he has not previously accounted to plaintiff, or

(2) A joint venture of plaintiff and defendant to acquire oil leases on certain land owned by Peabody Coal Company in the Kincaid Pool in Christian County, Illinois.

A partnership is an association of two or more persons to carry on as co-owners a business for profit. The Uniform Partnership Act, Ill. Rev. Stat. 1969, ch. 106½, par. 6.

■■ A partnership between two or more parties is a contractural relationship. There must be a meeting of minds of the parties to create a partnership. The intention of one party alone cannot create a partnership.

■■ As between the parties the question of partnership is one of intention that must be proved by an expressed agreement, either written or oral, or be inferred from the acts and conduct of the parties. *Olson v. Olson*, 66 Ill.App.2d 227, 213 N.E.2d 95.

■■ A joint venture is an association of two or more persons to carry out a single enterprise for profit. *Ditis v. Ahlvin Construction Co.*, 408 Ill. 416, 97 N.E.2d 244. The only distinction of consequence between a partnership and a joint venture is that a joint venture relates to a single specific enterprise or transaction, while a partnership relates to a general business of a particular kind.

In order to determine the relationship between the plaintiff and the defendant, Simpkins, in this case, we must ascertain, if possible, the intent of the parties.

It is not contended that any written agreement was entered into be-

tween the parties prior to 1955, during 1955, or after 1955, to engage in the oil business as equal partners for the purpose of acquiring, purchasing and developing commercial oil leases in the tri-state oil basin located in Illinois, Indiana and Kentucky. Neither is it contended that any written agreement was entered into between the plaintiff and defendant to engage in a joint venture to acquire oil leases on Peabody Coal Company's land in the Kincaid Pool.

However, the plaintiff alleges in his amended complaint, and testified that he and defendant discussed the question of their engaging in the oil business as equal partners in the late spring or summer of 1950, and did, at that time, agree orally to engage in the oil business as equal partners for the purpose of acquiring and purchasing and developing commercial oil leases in the Illinois basin. This testimony is not supported by other witnesses and is strenuously denied by the defendant.

The trial court found that no oral or written agreement, either expressed or implied, having the effect of a general partnership, was ever entered into or ever existed between the plaintiff and defendant Simpkins to engage in the oil business as equal partners for the purpose of acquiring and purchasing and developing oil and gas leases as claimed by the plaintiff. And the court further found that plaintiff produced no document or written memorandum to support his contention that he and the defendant were engaged in either a partnership or a joint venture in acquiring leases and developing oil and gas on the Peabody acreage in Christian County, Illinois.

■■ A review of the record in this case leads us to conclude that such findings by the trial court are consistent with the evidence, and that such findings are supported by the greater weight of the evidence.

We will next consider the contention of the plaintiff that in the absence of any written or oral agreement the acts and the conduct of the parties in negotiating for and obtaining oil leases from the Peabody Coal Company were such as to show an intention on the part of the plaintiff and defendant to be partners or to engage in a joint venture in taking leases and developing the Peabody tract.

The trial proceedings spawned a voluminous record illuminated by an unlimited number of exhibits, many of which threw little or no light on the real issue before the court, to determine whether or not the plaintiff and the defendant had agreed to be partners in the oil leasing business, or, by their acts, conduct and words, had indicated an intention to form a general oil leasing partnership, or to engage in a joint venture in acquiring and developing oil leases on the Peabody tract.

The record discloses that the plaintiff and the defendant first became

involved together in business in 1945. It appears that their first adventure was the Missouri Acceptance Company. In 1947, and during the next ten years, the plaintiff and defendant organized many corporations and engaged in various business ventures, among them being the sale of Ford cars and trucks; the purchasing and sale of used cars; the leasing of motor vehicles; and the purchasing and management of real estate, etc. This company was known as J.S. Incorporated.

On October 16, 1947, the articles of incorporation of Joe Simpkins Incorporated were amended to extend its corporate purposes to include the acquisition, holding, using, selling, etc., of oil and gas leases and to carry on a broad operation in the oil and gas business. Subsequent thereto, some oil leases were taken in the name of the corporation and assigned to the parties, some leases were taken in the name of the plaintiff, and other leases were taken in the name of Simpkins and assignments made.

On September 23, 1952, the plaintiff and defendant entered into a written partnership agreement under the name of Simpkins Contractors, for the purpose of drilling for oil and gas and for other related activities in connection therewith, as the parties may agree to and as may be necessary or desirable to carry on business of the partnership. Paragraph (i) of this agreement provides as follows:

"The principle business of the partnership shall consist in drilling for oil and gas and such related activities as the partners may agree upon  *  *  *."

In January, 1953, Simpkins Contractors (the oil drilling partnership) was in need of some tubular goods necessary for drilling operations and completion of oil wells. Prior to 1953 such material had been rationed by the Federal Government upon the basis of demonstrated future need and rigid control was exercised over such material through the Petroleum Administration of Defense, known as PAD. This agency passed upon written detailed requests of oil field operators for approval of the purchase of new steel pipe from oil field supply companies.

The parties agreed between them that Ramacciotti, who was going to Washington, would personally handle the matter of trying to induce the PAD to allot to their drilling partnership some tubular goods. A letter was prepared and signed by Joe Simpkins, designated in the record as PX 11, addressed to the Petroleum Administration of Defense, Washington, D.C., authorizing Ramacciotti to make the request and deal with PAD in trying to obtain tubular goods which were needed. There is some conflict in the evidence as to how and where the letter was prepared, but it is not denied that the letter was written and signed by Simpkins and given to Ramacciotti to be used in Washington.

The letter is as follows:

"JOE SIMPKINS OIL DEVELOPMENTS

General Office
6421 Easton Avenue
St. Louis 14, Mo.
Field Office and Warehouse
Fairfield, Illinois
January 31, 1953

Petroleum Administration for Defense
Interior Building
Washington 25, D.C.

Gentlemen:

This will authorize the bearer, Frank L. Ramacciotti, co-partner with the undersigned Joe Simpkins, in the purchase, acquisition, development, production, drilling and operation of oil and gas leases, mineral interests and oil wells, to amend, modify, substitute or change any application, form, or request for oil field tubular goods, which has been filed, or which may be concurrently filed with the Office of Petroleum, Administration of Defense in the name of the undersigned Joe Simpkins, and I hereby authorize Frank L. Ramacciotti to negotiate, prepare, execute and file with said Office of Petroleum Administration for Defense, in my name and in my stead, such additional applications, forms, amendments to applications, or requests for oil field tubular goods as he, in his judgment and discretion, may consider advisable, it being my intention to hereby grant and give to Frank L. Ramacciotti full power and authority to do and perform every act and thing necessary and proper in the premises, as fully and effectively, to all intents and purposes as I might or could do if personally present, with full power of substitution.

Yours very truly,

/s/ Joe Simpkins"

The plaintiff strenuously argues that this letter, written to PAD on January 31, 1953 on Joe Simpkins Oil Field Development stationery, and signed by Joe Simpkins, is conclusive proof of the fact that the plaintiff and defendant were engaged in a general oil and gas leasing partnership.

At the time this letter was written, the plaintiff and the defendant were partners under a written agreement for the purpose of drilling for oil and gas and conducting related activities, and certainly a related ac-

tivity would be the securing of pipe for oil wells, and it is our opinion that plaintiff and defendant, at the time of writing the letter, designated as PX 11 in the record, intended to impress upon PAD that they were engaged as partners in the drilling, developing and operation of oil and gas wells. At the time the letter was written to PAD, the plaintiff and the defendant were and had been engaged in various joint ventures in securing and dealing in oil and gas leases, but had never been engaged under any general contract, either written or oral, for the purpose of securing oil and gas leases.

Since 1947, the plaintiff and the defendant had been taking some leases in the name of Joe Simpkins Oil Development Company (J.S. Inc.) which they owned equally. Each of them had also taken some leases in his own name, and since 1947, they had engaged in numerous joint ventures in securing oil and gas leases, but at no time had they entered into any general partnership agreement to secure oil and gas leases. The written agreement which they entered into on September 23, 1952 only related to drilling operations and made no provision for leasing.

■■ We do not think that the letter, designated in the record as PX 11, proves that the parties were at the time partners operating under a general oil and gas leasing partnership agreement, and we certainly do not believe that this letter is proof that the plaintiff and the defendant were partners, or engaged in a joint venture, in securing the Peabody leases some three years later. Prior to the date the letter was written, the parties had engaged in many joint ventures in leasing operations and to that extent the letter speaks the truth.

Ramacciotti attempted in 1955 to obtain leases on the Peabody land in Illinois, he made a trip to Chicago in an effort to contact some of the Peabody officials, but was unsuccessful, and following the trip, he contacted Judge Poos in Hillsboro, Illinois about oil leases on the Peabody tract. Plaintiff, to prove that the parties were engaged in a joint venture in attempting to secure leases on the Peabody tract in Christian County, Illinois, puts great stress on the testimony of Judge Omer Poos. Judge Poos testified that he had known Ramacciotti since 1922; that Ramacciotti came to see him in the summer of 1955 and inquired of him about oil and gas leases on Peabody land in Christian County, Illinois, for him and Joe Simpkins, and further inquired whether he knew anybody in Christian County, Illinois, who had connection with Peabody Coal Company. Judge Poos further testified that he told Ramacciotti that Judge Bliss, who was a good friend of his, might have some connections and that he would see him, which he did. He further testified that he told Judge Bliss of his friendship with Ramacciotti, and asked him if he could help us with Peabody Coal Company in getting an oil and gas lease on Peabody

land in Christian County, and he answered that he would try his best and do whatever he could. Judge Poos further testified that several days later he was informed by Judge Bliss that Peabody was not leasing and he could not get any leases, and that he telephoned Ramacciotti and informed him that he could not get a lease for him.

The testimony of Judge Poos is uncontradicted that Ramacciotti had contacted him in an effort to obtain leases on the Peabody land and that Judge Poos did make contacts about the Peabody leases and reported back to Ramacciotti, and assuming that Ramacciotti did tell Judge Poos that he was trying to obtain leases for himself and Simpkins in the absence of a partnership agreement, does not show any intention on the part of Simpkins to be in partnership with Ramacciotti in securing Peabody leases.

The record discloses that Simpkins, beginning in 1954, made considerable effort in trying to get some leases on land owned by Peabody Coal Company in Christian County, Illinois, but was unsuccessful. In April of 1956, J. Wesley McAfee, who was President of the Union Electric Company in St. Louis, Missouri, contacted Mr. Simpkins about purchasing an automobile for his wife. During the negotiations with reference to the purchasing of the automobile they engaged in some discussion with reference to oil leases and defendant told McAfee that he had been interested in obtaining leases from Peabody Coal Company, but had not been able to obtain any leases. McAfee later contacted some of the officials of the Peabody Coal Company and was able to negotiate a lease on a small tract on behalf of himself, J. E. Rarick and W. A. Hayes, in which an interest was assigned to Simpkins. There is no evidence to show that Simpkins, in his conversation with McAfee with regard to oil and gas leases on the Peabody land, indicated in any way that he was a partner with Ramacciotti and the first oil lease which was obtained, was obtained by McAfee, and not by Simpkins. The actions and conduct of Simpkins from the beginning do not lead us to believe that he was or intended to be in partnership with Ramacciotti or that he and Ramacciotti were engaged in a partnership in obtaining oil and gas leases.

The plaintiff performed no services and did not perform any work in the acquisition of the oil and gas leases which were obtained from Peabody Coal Company, beginning in June of 1956, and thereafter. He did not produce at the trial any documents or written memorandums to support his contention that he was engaged in a general oil leasing partnership with the defendant as to the Peabody acreage. The actions of the plaintiff during the years 1956, 1957 and 1958 and up to the time of filing this suit were not such as to indicate that the plaintiff intended to be a partner with Simpkins in the oil leasing business. The plaintiff had

notice, or at least constructive notice, by the Jerry Robbins Reports, that drilling operations were being conducted on the Peabody tract in Illinois, commencing in June of 1956 and continuing until the filing of this suit. The plaintiff had knowledge, either actual or constructive, that large sums of money were being expended by the defendant in the drilling and completion and operation of wells on oil leases located in Christian County, Illinois. The plaintiff, at no time, made any inquiry as to the amount of expenditures made on the drilling operations, and the plaintiff made no attempt to pay any part thereof. Partnership books were not kept, no advertising of any kind was done by the use of signs, letterheads or other means, no separate partnership bank account was maintained and many times between 1949 and 1956, Simpkins obtained oil leases on various tracts of land and in some cases the plaintiff was offered an interest in the leases and in some cases he was not, but there is no evidence that this was done under any partnership agreement, but each case was a separate transaction.

■■ We conclude from the evidence in this case that no oral or written agreement, which amounted to a general partnership for the leasing of oil and gas, was ever entered into between the plaintiff and the defendant and we further conclude that the acts of the parties, beginning in 1956 and up until the time this suit was filed, were not such as to indicate that there was any intention on the part of the plaintiff and Simpkins to engage in a general partnership in leasing for oil and gas, nor were their acts such as to show that they were engaged in a joint venture in leasing and developing the Peabody tract in Christian County, Illinois.

The chancellor had this case under advisement for about three months and made a number of specific findings of fact, some of the more pertinent ones being as follows:

(1) "That defendant at no time intended any general partnership relation with the plaintiff as to the oil business and particularly as to oil leases and mineral interests.

(2) "That no oral or written agreement, either expressed or implied, having the effect of a general partnership, was ever entered into or ever existed between the plaintiff and defendant Simpkins, as to the acquisition, development and sale, or the acquisition, drilling, development, or the acquisition or any part or combination of the above, of oil and gas leases and mineral interests as claimed by plaintiff, except that there was a series of joint ventures entered into between the parties.

(3) "That no confidential or fiduciary relationship existed between plaintiff and defendant as to any oil leases, mineral interests or oil business that would give any basis to this cause, and defendant did

not exercise any undue influence in his dealing with plaintiff in any oil dealings involved in this suit.

(4) "That defendant was not guilty of any fraud or misconduct in his dealings with plaintiff in the oil business.

(5) "That the defendant was unable to obtain any oil leases from Peabody Coal Company in the year of 1955, and the lease finally acquired in June, 1956, was obtained through the efforts and on behalf of J. W. McAfee, J. E. Rarick and W. A. Hayes, who, after learning that Peabody Coal Company would execute a lease on a small tract of acreage, agreed to divide up the interests among themselves and Joe Simpkins.

(6) "That plaintiff performed no material services and did no work in the acquisition of the oil and gas leases obtained from Peabody Coal Company, commencing in June, 1956.

(7) "That plaintiff had knowledge of the drilling of all the wells in Christian County and many wells elsewhere, in which he claims an interest, as shown by Jerry Robbins' Reports (Plaintiff Exhibit 66-A), commencing in June, 1956, and continuing until the filing of his suit in the latter part of 1960."

(8) "That plaintiff is not entitled to any accounting as against Joe Simpkins or Ashland Oil and Refining Company as to any leases or oil wells involved in this suit, and for which plaintiff does not have an assignment thereto."

A decree was entered on February 16, 1968, in which the court found that there was no partnership as to oil and gas leases or mineral interests between the plaintiff and Simpkins; nor was there any joint venture between the plaintiff and Simpkins as to the Kincaid Pool or the Peabody oil leases in Christian County, Illinois; that plaintiff is entitled to no accounting as to either defendant and that the equities of this cause are with the defendants Joe Simpkins and Ashland Oil and Refining Company and against the plaintiff, Frank L. Ramacciotti. The complaint of plaintiff was dismissed and judgment entered that the plaintiff recover nothing by his suit and defendants go hence without day.

From our review of the record in this case, and the careful consideration given by the chancellor, we are of the opinion that the findings of the trial court have a reasonable basis in the evidence and are not manifestly against the weight of the evidence and that said decree should be and is hereby affirmed.

Judgment affirmed.

SMITH, P. J., and SPIVEY, J., concur.