PUBLIC ELECTRIC CONSTRUCTION COMPANY, Plaintiff-Appellant and Cross-Appellee, *v.* HI-WAY ELECTRIC COMPANY *et al.*, Defendants-Appellees and Cross-Appellants.

First District (2nd Division)    No. 77-471

Opinion filed June 27, 1978.

Landesman, Schwartz & Auslander, of Chicago (Merwin Auslander, of counsel), for appellant.

Vihon, Fuchs, Temple & Berman, Ltd., and Edward R. Nathanson, both of Chicago (Robert F. Fuchs and James A. Piszczor, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This appeal and cross-appeal arose from an agreement concerning electrical construction work. Following a bench trial, the court entered judgment in the amount of $39,588.96 for plaintiff, Public Electric Construction Company (Public), and against defendants, Hi-Way Electric Company (Hi-Way), and Robert Goodman. Judgment was also entered in Public's favor on defendants' counterclaim for certain setoffs. All parties appeal from the trial court's opinion and order, questioning the adequacy of the judgments rendered.

In late 1968, The Taubman Company (Taubman) contacted Goodman, Hi-Way's president and major stockholder, about subcontracting electrical work for the development of the Woodfield Mall Shopping Center in Schaumburg, Illinois. Hi-Way had performed such work for Taubman for five to 10 years prior to that time. The Woodfield project interested Goodman; and Hi-Way decided that the electrical work would be performed by Complete Electrical Engineering & Design Co., Hi-Way's wholly owned subsidiary. In the summer of 1969, Goodman talked with Burt Simon, Public's secretary and major stockholder, about the prospect of Public providing labor for the project. Simon was extremely

interested. Thereafter, the parties held a series of meetings wherein they negotiated an agreement.

Taubman and Hi-Way negotiated their subcontract in October of 1970. During late October and early November of that year, Goodman, Simon, and employees of both their companies met to work out an estimate to be submitted to Taubman. Public and Hi-Way finally agreed to the figure of $320,000. They also agreed that Public would supply the labor and Hi-Way the material, with an equal division of profits and losses. At another meeting, the parties agreed that if Public obtained additional work from others or additional, unrelated work from Taubman, then any profits or losses on the work would be divided equally. On November 4 and November 30, 1970, Public entered into two subcontracts with Taubman directly. The parties differed as to whether the oral agreement to share profits and losses on such outside work occurred before or after the Taubman/Public subcontracts. In November or December of 1970, Public began work pursuant to its oral agreement with Hi-Way, although that agreement had not yet been reduced to writing. The attorneys for both sides were in the process of working out the terms. On December 2, 1970, Hi-Way executed its subcontract which Taubman had prepared the month before. Simon was aware of the Taubman/Hi-Way subcontract and had asked Goodman to see it. Goodman told him that it was none of his business.

Simon admitted that he had seen preliminary drafts of the Hi-Way/Public agreement, which designated Hi-Way as subcontractor and Public as sub-subcontractor. On March 17, 1971, Hi-Way and Public executed the written agreement. It provided in part that: (1) each party would be reimbursed its actual costs; (2) Public would provide the labor and supervision; (3) Hi-Way would provide all necessary material at cost; and (4) the parties would share equally in any profit or loss. The contract price was $320,000, subject to modification by work change orders, which would be added to or deducted from the contract price. In addition, a portion of the agreement specifically stated:

> "It is understood and agreed by and between the parties that this Agreement is not contemplated to form any association, partnership or joint venture agreement between the parties hereto. The parties will continue to be subcontractor and sub-sub-contractor, respectively."

At trial Public maintained that the parties were joint venturers and that Hi-Way had fiduciary duty to reveal the $445,000 price on the Taubman/Hi-Way subcontract before entering into the agreement with Public. Hi-Way argued that the Taubman/Hi-Way subcontract was a comprehensive design-build contract which included not only the Hi-Way/Public construction work valued at $320,000, but also the design

work for Woodfield to be performed by Complete, the Hi-Way subsidiary. In addition, Hi-Way claimed set-offs based on amounts Public had received from Taubman on the two Taubman/Public subcontracts.

The trial court found that no joint venture existed between the parties, that Hi-Way owed Public $39,588.96 on the Hi-Way/Public agreement, and that Public owed Hi-Way nothing on the Taubman/Public subcontracts. Public now appeals; Hi-Way and Goodman cross-appeal.

## I.

■■ We note at the outset that the rule controlling this case is a simple one. A reviewing court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624; *Gaffney v. McCarron* (1st Dist. 1977), 45 Ill. App. 3d 944, 946, 360 N.E.2d 508.) The rule is also applicable to the assessment of damages. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 149, 281 N.E.2d 323.) As we cannot say that the trial court's holding as to either the original claim or the counterclaim was against the manifest weight of the evidence, we affirm the judgments.

## A.

■■■ Public contends that the parties were engaged in a joint venture as of November 1970, and that such relationship continued even after the oral agreement was reduced to writing. We disagree. A joint venture is not a status created or imposed by law, but is a relationship voluntarily assumed and arising wholly *ex contractu*; the relationship is a matter of intent as between the parties. (*Richton v. Farina* (1st Dist. 1973), 14 Ill. App. 3d 697, 704, 303 N.E.2d 218.) Therefore, it is necessary that both parties intend to enter into a joint venture and the intention of only one party to do so is insufficient. (*Ramacciotti v. Simpkins* (4th Dist. 1970), 130 Ill. App. 2d 733, 735, 266 N.E.2d 700.) In the case at bar the record is clear that Hi-Way never intended to engage in a joint venture. Hi-Way intended to enter into a sub-subcontract, not a joint venture. Although Simon testified that during the period of negotiation he instructed his attorneys to draft contract language indicating the existence of a joint venture, Simon's own attorney wrote to Hi-Way's attorney agreeing the relationship was one of sub-subcontract. Goodman testified that at a meeting in November 1970, the parties agreed to draft a sub-subcontract. In light of this and other testimony by Hi-Way employees, the trial court was justified in concluding that the parties did not intend to form a joint venture in November of 1970.

■■ Furthermore, the contract as executed explicitly rejects the existence of any joint venture. Although the determination of whether a joint

venture exists depends upon the nature and substance of the enterprise and not exclusively upon the form of the agreement (*In re Estate of Sugar* (1st Dist. 1974), 22 Ill. App. 3d 484, 488, 317 N.E.2d 685), the intention of the parties here clearly emerges from the terms of the agreement. The primary object in construing a contract is to ascertain the intention of the parties which must be determined from the language of the contract; and if that intention may be ascertained from the wording of the contract, rules of construction have no application. (*Herlihy Mid-Continent Co. v. Sanitary District* (1945), 390 Ill. 160, 166, 60 N.E.2d 882.) The intention of the parties is easily ascertained here from the words used. The agreement states that no joint venture was contemplated and that the parties would continue as subcontractor and sub-subcontractor.

■■ ■ Having determined that the trial court correctly found no joint venture, we need not discuss Public's contentions that a fiduciary relationship existed between the parties, that a constructive trust should be imposed upon the assets of Hi-Way and Goodman, and that Public was entitled to punitive damages. All of the foregoing are dependent upon the existence of a joint venture. There was none. Moreover, Hi-Way's failure to answer Public's third amended complaint does not raise additional issues. As the trial court noted, Public never filed a motion to default Hi-Way for its failure to plead and never objected to the failure to answer until the close of the trial. Where a party proceeds with the case as though his adversary's pleading joining issue were on file, he waives the adversary's failure to plead. (*In re Estate of Marsh* (1st Dist. 1961), 31 Ill. App. 2d 101, 104, 175 N.E.2d 633.) An objection that a certain matter is not denied or properly denied may be waived by a party where he tries the case as if the matter were not in issue. (*McKinney v. Nathan* (1st Dist. 1954), 1 Ill. App. 2d 536, 543, 117 N.E.2d 886.) Any issue in this regard which Public has attempted to raise is now wavied.

■■ Public also maintains in the alternative, that even if no joint venture existed, the trial court erred in its computation of the profit realized on the Hi-Way/Public contract. We again disagree. Public has not shown how the trial court's conclusion was clearly erroneous. The trial court found that the total amount received by Hi-Way on the Hi-Way/Public contract was $492,152.75. To reach that figure the trial court had to have added the figure which Hi-Way's records reflected it received on the contract ($476,152.75) to the figure representing a rebate from the Commonwealth Edison Company ($16,000). Hi-Way points out that only that combination of figures in the record results is $492,152.75. The court then deducted the stipulated amount Public had received from Hi-Way ($161,857.08) and the stipulated amount of Public's costs ($284,496.42) to reach the gross profit of $45,799.25. One-half of that figure or $22,899.62 was Public's profit. In order that Public recover its unreimbursed costs from Hi-Way, the court

added $16,689.34 to Public's profit. The court then found that Public was entitled to the sum of $39,588.96. Although Public has suggested an alternative method by which to compute the amount to which it was entitled, Public has not shown why the trial court's method was clearly erroneous. Where the outcome of a case is contingent upon the facts found in the record, a reviewing court will not disturb the findings and judgment of the trial court in nonjury cases should the record reveal any evidence to support those findings. *Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 102, 163 N.E.2d 518.

### B.

In their cross-appeal, Hi-Way and Goodman maintain that the trial court erred by failing to deduct from Public's judgment one-half of the profit Public earned pursuant to the Taubman/Public subcontracts and certain change orders thereunder. Hi-Way admits that Goodman told Simon to go ahead with additional work. Defendants contend, however, that Hi-Way never waived its right to one-half of the profit on any additional work Public performed for Taubman. To support this claim defendants point to one of their exhibits, which allegedly shows that Public and Hi-Way consistently intended that Hi-Way would receive one-half of the profit on the Taubman/Public subcontracts. The exhibit in question, a summary sheet, does not indicate the source or date of its preparation and both sides disclaim any part in its preparation. We think this kind of dispute is best decided by the trier of fact.

■■ If a joint venture had existed between Public and Hi-Way, then Hi-Way's counterclaim would be more understandable. However, Hi-Way has always denied that Public and Hi-Way were joint venturers. Rather than relying on joint venture, Hi-Way argues that the agreement to share profits on Public's additional work was reached after the November 1970 meeting when the parties reached an oral agreement on the contract terms. In any event, the trial court found that Public entered into the Taubman/Public subcontracts *before* any oral agreement between Public and Hi-Way to share profits on any future work with Taubman. The conflicting testimony by witnesses for Public and Hi-Way generated considerable confusion on the question of when the parties entered into their agreement to share additional profits. Where the testimony in a trial without a jury is contradictory, the weight to be given to that testimony is a matter for the trial court, and its findings will not be disturbed unless manifestly against the weight of the evidence. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48, 145 N.E.2d 65; *First National Bank v. Village of Morton Grove* (1st Dist. 1973), 12 Ill. App. 3d 589, 594, 299 N.E.2d 570.

Public has not demonstrated that the trial court's findings were against

the manifest weight of the evidence, nor have Hi-Way and Goodman. We, therefore, affirm the judgments rendered by the circuit court of Cook County in its opinion and order.

Affirmed.

PERLIN and BROWN, JJ., concur.