JAMES T. HERST *et al.*, Plaintiffs-Appellees, v. ALVIN C. CHARK *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—88—3722

Opinion filed September 9, 1991.

Jeffery Strange & Associates, of Wilmette (Jeffery Strange, of counsel), for appellants.

Merle L. Royce, of Chicago, for appellees.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

This is an interlocutory appeal pursuant to Supreme Court Rule 307 (107 Ill. 2d R. 307) from an order granting a preliminary injunc-

tion, an accounting, and the right to distribution of revenues on behalf of plaintiff, James T. Herst (hereafter Herst). Herst and his corporation, Performance Source, Inc. (hereafter PSI), sued defendants, Alvin C. Chark (hereafter Chark), ACC Systems, Inc. (hereafter ACC), and Legal Liaison Service, Ltd. (hereafter LLS), for judicial dissolution of a joint venture, an accounting, constructive trust, and injunctive relief alleging that he and Chark were engaged together in the commercial debt collection business and that he was entitled to certain remuneration as a result. Chark filed an answer individually and a counterclaim on behalf of LLS asserting that Herst had been a commission salesman for LLS, that the parties had never entered into a joint venture, that Herst was engaged in unfair competition, tortious interference, and breach of fiduciary duty. No cross-appeal is involved.

In the verified complaint filed on November 30, 1988, Herst alleged that in 1982 he and Chark entered into a written or verbal agreement establishing a joint venture to engage in the commercial debt collection business where Herst was to sell the venture's services to commercial clients through the use of his unique marketing concept of a renewable, refundable retainer and Chark was to perform the collections of the clients' debts. The complaint alleged that Herst solicited clients, authored the sales documents and client agreements and that the two men established a jointly owned reserve account for the refund of client retainers. The enterprise continued until September 1, 1987, when Herst gave Chark notice of termination of the venture and sought an accounting which Chark refused to provide.

On October 4, 1988, the trial court rendered its findings which were incorporated in the written order entered on November 22, 1988. The issue on appeal is whether the parties were engaged in business as joint venturers or whether their relationship was one of employer and independent salesman.

A court of review will not substitute its own opinion and disturb the findings of the trial court unless the holding of the trial court is manifestly against the weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.) The appellate court is required to review the entire record as a whole, considering all evidence in its aspects most favorable to the appellee. See, *e.g.*, *Trauscht v. Gunkel* (1978), 58 Ill. App. 3d 509, 515-16, 374 N.E.2d 843.

In this case, the trial court after hearing all of the evidence concluded that Herst and Chark were engaged in a joint venture and that

Herst was entitled to an accounting and a part of the revenues. We affirm.

Herst maintains that commencing in 1982, the parties entered into either a verbal or written agreement, as evidenced by the memo of understanding, to form a joint venture. Chark maintains that it was never his intent to enter into a joint venture relationship with Herst and asserts that the independent sales agent agreement is the best evidence of the parties' intent and their relationship and that no parol evidence should have been allowed in the trial court to contradict unambiguous terms that were expressed in the sales agreement.

Initially, we note that *Public Electric Construction Co. v. Hi-Way Electric Co.* (1978), 62 Ill. App. 3d 528, 378 N.E.2d 1147, which Chark refers to in support of his position, is distinguishable on its facts. In that case, plaintiff alleged that, pursuant to an oral agreement, the parties were engaged in a joint venture and thus requested the trial court to find that such a relationship continued even after the oral agreement creating a subcontractual arrangement was reduced to writing. The court there declined to find the existence of a joint venture, noting that a joint venture is not a status created or imposed by law, but is a relationship voluntarily assumed and a matter of intent as between the parties. Although the court stated that the intention of only one party to enter into a joint venture is insufficient, it concluded that where a relationship is governed by a contract, the contract controls. *Public Electric*, 62 Ill. App. 3d at 532.

■ In the present case, there is no specific formal joint venture agreement or contract of record. The independent sales agreement referred to by Chark is not the controlling document with regard to the relationship between the parties. We have diligently searched the record and the only relevant sales agreement we have found is the one Herst used when hiring his sales staff. There is mention of an exclusive sales agreement between Chark and Herst; however, this agreement appears to be no more than one of several draft proposals that was exchanged between the parties over the years in an attempt to reach a final agreement. Neither is the memo, standing alone, the controlling document. The record reveals that the memo dated September 16, 1982, was authored and signed only by Herst and that at the bottom of the memo is a note that the parties would prepare and approve a specific formal agreement by December 31, 1982. The parties, as previously mentioned, never entered into a formal written agreement. However, like other contractual relationships, the existence of a formal agreement is not an indispensable necessity. Our courts have found that, in the absence of any specific formal agree-

ment, a joint venture may be implied or established by proof of surrounding facts and circumstances showing such an enterprise was in fact entered into. (*Ditis v. Ahlvin Construction Co.* (1951), 408 Ill. 416, 97 N.E.2d 244; *Burtell v. First Charter Service Corp.* (1980), 83 Ill. App. 3d 525, 404 N.E.2d 455.) "It is the nature of the enterprise undertaken that controls, not the form of the agreement." (*Ditis v. Ahlvin*, 408 Ill. at 425.) While surrounding circumstances may prove the existence of a joint venture, there must be a meeting of the minds, an agreement, express or implied, which shows the parties' intent to embark on a joint venture. *Barton v. Evanston Hospital* (1987), 159 Ill. App. 3d 970, 974, 513 N.E.2d 65.

■■ ■ A joint venture is an association of two or more persons to carry on a single enterprise for profit. (*Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 147 N.E.2d 69.) Partnership legal principles govern joint ventures (*Bachewicz v. American National Bank & Trust Co.* (1986), 111 Ill. 2d 444, 448, 490 N.E.2d 680), and the only distinction of consequence between the two is that a joint venture relates to a single enterprise or transaction, while a partnership relates to a general business of a particular kind. (*Bachewicz v. American National Bank & Trust Co.* (1979), 75 Ill. App. 3d 252, 393 N.E.2d 652.) In addition to the requirement that a joint venture must have a contractual basis, express or implied, there must also be present:

    (1) a community of interest;

    (2) a proprietary interest in the subject matter;

    (3) a right to govern the policy in connection therewith; and

    (4) a sharing in both profit and losses.

(See *Richton v. Farina* (1973), 14 Ill. App. 3d 697, 303 N.E.2d 218.) Possibly, the most important criterion of a joint venture is joint control and management of the property used in accomplishing its aims. *Prassas v. Nicholas W. Prassas & Co.* (1981), 94 Ill. App. 3d 311, 315, 418 N.E.2d 904.

We have reviewed the record below and, in applying the foregoing principles of law, find that the evidence, as shown by the surrounding facts and circumstances, substantially proves the existence of a joint venture between the parties, even though Chark has continually denied it. We agree with the trial court's finding that Herst, a salesman, and Chark, a collections person, orally entered into a joint venture whereby the two would engage in the business of commercial debt collection. The evidence shows that pursuant to this relationship, Herst worked up his own collection program which entailed the sale of collection services under a refundable retainer deposit, generally in the amount of $1,200, for which the client would receive a credit in the

amount of 20% against the collection fees earned by the "fulfiller" of the collection services, *i.e.*, the person who actually performed the collection, Chark. Chark performed the collection services for a commission of 12½%, which was reduced to 7½% on amounts collected over $10,000.

Jerry Shumsky, a former employee of Chark, who worked with the parties from 1982 until February 1985, confirmed that the program was Herst's idea and also corroborated Herst's account that when the men first met Chark was attempting to expand his business with the prepaid legal letter service, where a collection letter would be sent to debtors under the auspices of an attorney. Mr. Shumsky stated that Herst was not involved in the legal letter service business, which never got off the ground, but did greatly expand Chark's business with the retainer program.

Based upon the depositions and exhibits on file, we find that the parties' descriptions of their relationship, together with the testimony of Jerry Shumsky, demonstrate a detailed agreement to engage together in a collection business. Pursuant to the memo, the parties were to divide the business along two function lines, marketing and fulfillment, and also divide the revenues and expenses of the enterprise along the same functional lines. Although the memo was authored and signed only by Herst, the evidence in the record reveals that the parties operated the enterprise in the manner as set forth therein from 1982 until 1987.

Moreover, the record demonstrates that Herst contributed his efforts and skills to the enterprise by conceiving the idea of the refundable retainer program, under which he immediately acquired 80% of the prepaid retainer. He authored the sales materials, client starters kits and client agreements and paid for marketing expenses, conducted seminars and wrote articles. We believe that the creation and use of the reserve fund, whereby the remaining 20% of the prepaid retainer was set aside, establishes that the parties provided for the sharing of losses and profits of the enterprise. The account was jointly owned and the parties drew upon the initial reserve and renewal amounts above a certain figure that was required to remain in the account in the event a client requested a refund. From time to time Herst borrowed against the reserve account, providing promissory notes reflecting such borrowing. Certain expenses were paid from this account as well. Even though Herst did not share in the costs of the office or the profits and losses of Chark's business as a whole, he nevertheless shared in that part of the profits and losses as

between the parties with respect to particular clients serviced through the refundable retainer program set up by Herst.

Further, Herst was always identified as a principal of the business and was held out to the public as such. The fact that Herst did not participate in the management of the collection portion of the enterprise does not, in our view, preclude the existence of a joint venture. He did, however, control the management aspects of the soliciting and sales functions of the enterprise. He hired his own sales staff and paid them a part of the commission to which he was entitled pursuant to his agreement with Chark. As stated previously, the independent sales agreement that Chark discusses in his brief is the type of agreement that Herst entered into with his sales agents. He hired other personnel, marketing consultants, conducted seminars and wrote articles and publications about the type of business he and Chark conducted. We find these facts and circumstances supportive of Herst's position regarding the agreement of the parties and the right of management and control on the part of Herst. The legal requirement of a right to management or control has been interpreted as requiring some right by the parties to direct and govern the conduct of each other in connection with the joint venture. *Clapp v. JMK/Skewer, Inc.* (1985), 137 Ill. App. 3d 469, 484 N.E.2d 918.

Moreover, we agree with the trial court's finding that commencing in September 1982 and continuing throughout the years, the parties continued to negotiate a final written agreement. Despite numerous attempts and draft agreements, the parties were never able to reach a written agreement, and thus Herst terminated the parties' relationship on September 11, 1987.

■ Accordingly, with respect to the relationship between Herst and Chark, we believe that the trial court properly found that the facts and circumstances demonstrate that the two men were engaged in a joint venture, rather than a principal/agent sales business. The only contrary evidence is Chark's denials; however, the issue of intent, at best, presents a question of the credibility of the witnesses, which is within the exclusive province of the trial court. (*Bauske v. City of Des Plaines* (1957), 13 Ill. 2d 169, 181, 148 N.E.2d 584; *John Allan Co. v. Harvey* (1971), 131 Ill. App. 2d 626, 629, 267 N.E.2d 533.) On review, we will not disturb that finding. Where the testimony of the parties is susceptible to a challenge of credibility, as where the testimony or evidence is contradictory, "the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponder-

ance thereof." *Reese v. Melahn* (1973), 53 Ill. 2d 508, 513, 292 N.E.2d 375.

■ Finally, Chark maintains that parole evidence of certain matters was improperly admitted to establish the existence and scope of the parties' relationship. We disagree, as in the instant case, parole evidence is admissible where a contract is incomplete or its language is ambiguous or uncertain. See, *e.g.*, *Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 251 N.E.2d 242.

We affirm the decision of the trial court granting the preliminary injunction and other relief and remand this matter for further proceedings.

Affirmed and remanded.

CAMPBELL and O'CONNOR, JJ., concur.