FREDERICK EICKMEYER *et al.*, Plaintiffs-Appellants, v. BLIETZ ORGANIZATION, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—93—4332

Opinion filed September 30, 1996.

David A. Tanzer and Thomas J. Dimitrogff, both of Chicago, for appellants.

Raymond H. Groble III and Darren J. Hunter, both of Chicago, for appellee.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
Plaintiffs, Frederick and Ann Eickmeyer, brought this action in the circuit court of Cook County against defendant, the Blietz Organization, Inc., seeking to recover damages for the faulty construction of a house. Plaintiffs alleged Blietz breached its implied warranty of habitability, fraudulently concealed and misrepresented the underlying soil problems causing the "structural defects," and violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1992)). After a bench trial, the trial court entered the judgment in favor of defendant. It is from this judgment that plaintiffs now appeal to this court pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

The pertinent facts are as follows. Blietz Organization, Inc., and Bruce Blietz (collectively referred to as Blietz) constructed the one-level house in question in the winter of 1976. On April 1, 1977, Blietz sold the house to Anthony and Betty Fredericks, the original owners. The rear of the house, which includes the master and guest bedrooms, two bathrooms, two closets and a den, was constructed on a concrete slab. The interior floor slab does not rest on the foundation walls but, rather, is supported by the soil under the concrete slab. Since the house was built in the winter, the soil upon which it was built was frozen. Climatological records indicate that during December of 1976 through February of 1977, the temperatures were extremely cold. Blietz indicated that precautions were taken before the floor slab was poured, such as installing temporary furnaces to keep the ground from freezing. The house is located in a unique subdivision of Lincolnshire, Illinois, called Wood Creek Courts. The subdivision's distinctiveness is made up of dense wooded areas that surround the properties. Each residence there is subject to an environmental preservation declaration that controls what can and cannot be done with the trees and surrounding areas. In close proximity to the rear of the house are two large, mature trees. This is important for defendant's expert's theory of soil desiccation.

On September 15, 1983, the house was purchased by the Eickmeyers. In 1984, one year later, the Eickmeyers noticed a slight unleveling of the floor in the south wall of the master bedroom, which resulted from a crack in the concrete floor. Ann Eickmeyer testified that she contacted Blietz in order to correct the problem. However, Blietz testified that he did not recall nor did Blietz have any record that he went to the Eickmeyers' home in 1984. The trial court concluded that Blietz did not go to the house in 1984.

In any event, in 1985, the Eickmeyers hired Kelly Construction Company in order to repair the cracks and level the floor. Kelly showed the Eickmeyers that the crack ran through all three rooms in the rear of the house and that the slab had settled in that area approximately one-half inch. Kelly pulled back the carpeting about eight to nine feet in each room and leveled the floor. He also showed the Eickmeyers some previous leveling of the floor and the cracks in the foundation wall. Kelly installed three underpinnings on the exterior foundation walls in order to keep the floor from settling further. These repairs cost the Eickmeyers a total of $300. After this incident, the Eickmeyers did not question the Fredericks about any prior structural defects.

In 1987, plaintiffs had new carpeting installed. The people installing the carpet noticed cracks in the concrete and showed them to the Eickmeyers. The cracks were in the same area previously repaired by Kelly. It was evident that the floor slab had settled further. In order for the carpeting to appear leveled, the carpet installers had to place additional padding in certain areas near these cracks in the two bedrooms and the den. Around that time, the Eickmeyers noticed a separation of the tub from the tub surround in one of the bathrooms and saw cracks in some of the woodwork in their home.

By 1990, the Eickmeyers contacted Blietz. Blietz responded by arriving at the house. Although he did not conduct any tests on the soil, concrete, or on the structure of the house, Blietz did examine the interior and exterior of the house and looked at the concrete slab through a crawl space in the basement. Blietz noted that the floor slab had settled further. He observed some voids in the back-fill underneath the concrete slab. Blietz suggested to the Eickmeyers that they have the floor mudjacked in order to return it to its prior level. Mudjacking is a corrective procedure used to raise the concrete slab by pumping liquid cement through a series of holes cored in the slab to fill the voids. However, in the end, the Eickmeyers decided not to go with the mudjacking procedure due to the numerous problems that could result from that procedure. Instead, the Eickmeyers decided to pursue a more comprehensive solution to the problems.

In 1991, the Eickmeyers took bids to reconstruct the entire floor in the rear of the house. They accepted a bid from Lawrence Liotta of Liotta Construction Company for $67,000, of which $4,000 was unrelated to the settlement repairs. Liotta discovered the following problems: (1) the concrete slab that supported the floor had separated from the foundation and sunk approximately one inch; (2) there were numerous voids between the concrete slab and the back-fill upon which the slab ought to have been resting; (3) the shower in one bathroom had a 10-inch void underneath the slab; (4) the bathtub in the master bathroom was being physically supported by the drain pipe; and (5) the interior walls had separated from their base plates on the floor and from the ceiling. Moreover, there were gaps between the floor and wall and between the rooms, and interior doors, cabinet doors and windows became unaligned.

Shortly thereafter, Liotta began repair work. The work included the cubing, removal and replacement of the entire 1,100 square feet of the concrete slab, the underlying soil, all interior walls related thereto, and the heating and plumbing. Although it is disputed as to whether Liotta conducted soil tests, he postulated that the cause of

the slab's settlement was related to frozen soil. Liotta believed that when the soil thawed, the pea gravel back-fill underneath the slab began to roll away like marbles, which created the voids between the slab and the soil. It was not until Liotta opened the walls and chopped the concrete slab that the Eickmeyers discovered the extensive repair work previously done by defendant. Plaintiffs theorize that defendant performed cosmetic work in 1977 in order to cover the underlying soil problems before the original owners moved in.

The trial court found that the settlement of the concrete slab was due in part to soil desiccation caused by the two large mature trees close to the rear of the house. Louis Walter, Jr., a soils engineer, testified that soil desiccation is the removal of moisture from clay soils, which results in the soil increasing in strength, but when the moisture content goes down, the soil shrinks, resulting in settlement. Walters further testified that continuing settlement for more than 10 years after a house is built is attributable to soil desiccation, since settlement by improper back-fill or frozen soil would reach equilibrium after the first two years of construction.

The trial court found for defendant and plaintiffs now appeal.

## ISSUES PRESENTED FOR REVIEW

On appeal, plaintiffs argue that the trial court's findings were against the manifest weight of the evidence. Specifically, plaintiffs contend that defendant breached its implied warranty of habitability. Plaintiffs further contend that their cause of action is not time-barred by the statute of limitations, since defendant fraudulently concealed the problem.

## OPINION

■ As a preliminary matter, we note that compliance with Supreme Court Rule 341 is of importance. Specifically, Rule 341(e) lays out the structure of the appellate brief. Rule 341(e)(2) provides, in pertinent part, that:

> "[The Nature of the Case shall be an] introductory *paragraph* stating (i) the nature of the action and of the judgment appealed from and whether the judgment is based upon the verdict of a jury, and (ii) whether any question is raised on the pleadings and, if so, the nature of the question." (Emphasis added.) 155 Ill. 2d R. 341(e)(2).

Plaintiffs violated this rule by submitting seven pages, instead of one paragraph, explaining the nature of the case. This court has held that "these rules are not merely suggestions [citations] and it is within our discretion to strike [plaintiff's] brief and dismiss the appeal based on violations of these rules. [Citation.]" *Geers v. Brichta,*

248 Ill. App. 3d 398, 400, 618 N.E.2d 531 (1993). However, we decline to take such a severe action at this time; instead, we will proceed to discuss the merits of this case.

The critical issue presented by plaintiffs is whether the trial court's ruling is against the manifest weight of the evidence.

It is well established in Illinois that a new trial should only be granted if the verdict is contrary to the manifest weight of the evidence. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 509, 229 N.E.2d 504 (1967). This court should review the entire record as a whole, considering all evidence in its aspects most favorable to the appellee. *Herst v. Chark*, 219 Ill. App. 3d 690, 579 N.E.2d 990 (1991). A verdict will be deemed to be against the manifest weight of the evidence if it is palpably erroneous and wholly unwarranted, the result of passion or prejudice, or appears to be arbitrary, unreasonable, and not based on the evidence. *Sandy Creek Condominium Association v. Stolt & Egner, Inc.*, 267 Ill. App. 3d 291, 294, 642 N.E.2d 171 (1994), citing *Doyle v. White Metal Rolling & Stamping Corp.*, 249 Ill. App. 3d 370, 618 N.E.2d 909 (1993).

We will address plaintiffs' first contention as to whether the causes of action enumerated in plaintiffs' complaint were in fact time-barred by the statute of limitations, as the trial court held. We begin by citing to the pertinent authority to this case.

■ Section 13—214(b) of the Code of Civil Procedure provides:

> "No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after *10 years* have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to expiration of 10 years from the time of such act or omission shall in no event have less than 4 years to bring an action as provided in subsection (a) ***." (Emphasis added.) 735 ILCS 5/13—214(b) (West 1992).

According to the statute of repose, a plaintiff who brings an action against a defendant-builder seeking damages for the faulty construction of a house must file suit within 10 years from the time the house was built pursuant to section 13—214(b) (735 ILCS 5/13—214(b) (West 1992)). Plaintiffs here argue that the 10-year statute of repose should have been tolled since they did not discover the settling of the concrete slab until after the 10-year period. Plaintiffs' house was built in 1977, and the suit should have been filed before 1987. However, it was almost 14 years after the house was built that plaintiffs, in 1991, decided to file the suit and, thus, were time-barred. But in a very recent decision, our supreme court held:

> "*Literal application of the statute of limitations *** sometimes produced harsh results, and in response, the discovery rule was developed.* When the discovery rule is applied, it 'delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused.' ***
>
> Courts have applied the discovery rule on a case-by-case basis, weighing the relative hardships of applying the rule to both plaintiffs and defendants. The discovery rule has also been incorporated in several statutes of limitations [citation] and is generally treated the same whether created by common law or by statute. *The common law discovery rule, however, will not be applied where there is a contrary indication of legislative intent* [citation], *such as a statute of repose, which places an absolute outer time limit on when an action can be brought.*" (Emphasis added.) *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77-78, 651 N.E.2d 1132 (1995).

We find that the "discovery rule," which places an injured party under a duty to make further inquiries after he possesses sufficient information concerning both his injury and its cause (*Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 430 N.E.2d 976 (1981)), does not apply here since we have a 10-year statute of repose. We must follow legislative intent and deny this cause of action since the statute of limitations expired.

■ Next, plaintiffs argue that defendant fraudulently concealed the settlement of the concrete slab by extensively repairing the settlement prior to the original owners moving in, sometime in 1977. In addition, plaintiffs argue that defendant never informed plaintiffs of these repairs previously undertaken on the house. If fraudulent concealment was present, impeding plaintiffs' discovery of the cause of action, then the action may be brought within five years from plaintiffs' discovery, and the 10-year statute of repose is tolled. Section 13—215 of the Code of Civil Procedure states:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such a cause of action, and not afterwards." 735 ILCS 5/13—215 (West 1992).

Our courts have held that fraudulent concealment stops the running of the statute of limitations until the cause of action is "discovered." See *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 403 N.E.2d 181 (1980); *Pelcak v. Bartos*, 328 Ill. App. 435, 66 N.E.2d 465 (1946); *Winger v. Chicago City Bank & Trust Co.*, 325 Ill. App. 459, 60 N.E.2d 560 (1945).

Plaintiffs rely on a federal case to support their contention that fraudulent concealment was present. We emphasize that we are not bound by federal decisions, although we can use them for guidance. In *Reichelt v. Urban Investment & Development Co.*, 577 F. Supp. 971 (N.D. Ill. 1984), the defendant constructed a house and sold it to James and Ruth Heinis, the original owners, on February 5, 1969. On March 14, 1980, the plaintiff purchased the house from the Heinises. Two years later, defects manifested themselves. In December of 1982, the plaintiff discovered large cracks in the floor and walls of the basement and excessive settlement of the interior floors and exterior patio. *Reichelt*, 577 F. Supp. at 972. The plaintiff claimed that the defendant breached the implied warranty of habitability and that its conduct constituted an unfair and deceptive trade practice in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (now 815 ILCS 505/1 *et seq.* (West 1992)). The statute of repose at that time was 12 years (Ill. Rev. Stat. 1981, ch. 110, par. 13—214(b)). It is now 10 years. (See 735 ILCS 5/13—214(b) (West 1992)). The plaintiff claimed that he was not time-barred in bringing this action, even though it was filed 14 years after the house was built, because the defendant intentionally and fraudulently concealed the defects in the house. Subsequently, the defendant filed a motion to dismiss.

The *Reichelt* court held, in part, that fraudulent concealment tolls the statute of limitations when affirmative acts or representations preventing discovery of the cause of action are present. *Reichelt*, 577 F. Supp. at 974. "Mere silence by the defendant, accompanied by the failure of the plaintiff to discover the cause of action, is not sufficient to toll the limitations period." *Reichelt*, 577 F. Supp. at 974. For purposes of the motion to dismiss, the district court took the alleged facts in the complaint as true and held that the defendant's concealment of the inadequate foundation of the house and the structural defects by filling and covering the cracks in the basement walls with cement, fiberglass and paint was fraudulent. Accordingly, the court held that the plaintiff's complaint was not barred by the statute of repose and constituted fraudulent concealment.

*Reichelt* is factually distinguishable from the case before us. Plaintiffs' arguments are premised on the theories that defendant fraudulently concealed the alleged repairs in 1977 and fraudulently misrepresented the defects in 1984 and 1990. Plaintiffs urge us to find that the trial court's ruling is against the manifest weight of the evidence. On the contrary, we conclude that the trial court's findings are well supported by all the evidence in the record. Nothing leads us to believe that the trial court's decision is unreasonable and arbitrary. It is the trier of fact who is responsible for finding the facts

and judging the credibility and demeanor of the witnesses, not the reviewing court. See *Whyte v. Estate of Whyte*, 244 Ill. App. 3d 746, 614 N.E.2d 372 (1993).

■ In the case *sub judice*, plaintiffs' contention is premised on the fact that defendant fraudulently concealed and misrepresented to them the "structural defects" of the house. Plaintiffs submit that extensive repairs were made in 1977, prior to the original owners moving in. Yet, plaintiffs do not cite to any point in the record supporting their argument. Defendant and its experts testified that no repairs were done in 1977. The house was built in the winter of 1976-77, and the house was sold in April of 1977. The trier of fact found that no repairs were executed at that time, and we conclude that its finding is not arbitrary or unreasonable, given the evidence.

We note that defendant admits that extensive repairs were carried out in 1978 upon the Frederickses' request pursuant to a one-year express warranty defendant had given. The record supports the fact that defendant undertook the repairs in full view of the original owners. Of course, as plaintiffs pointed out, this does not mean that the Frederickses observed the workers 24 hours a day. However, defendant did fix the defects while the Frederickses were living at the house, which included leveling the floor and realigning the doors and windows. Importantly, after these repairs took place, there is no record that any other soil or settlement problems occurred. Thus, we can assume that the Frederickses lived in the house for $5^1/2$ more years without any major "structural defects."

In addition, we believe that plaintiffs' argument, that defendant while at the house fraudulently misrepresented to them that the house was structurally sound in 1984, has no merit. Based on the evidence, the trial court found that defendant was never at plaintiffs' house in 1984 and, thus, no fraudulent misrepresentation could have taken place.

Moreover, we fail to perceive how Blietz fraudulently misrepresented the settlement of the slab to plaintiffs in 1990. Blietz went beyond his duty in arriving at the house, 13 years after it was built, to examine the structural problems and offer solutions. Blietz recommended that mudjacking be performed. Plaintiffs decided not to use that procedure, but elected to reconstruct the entire rear of the house for over $63,000. We find that defendant did not commit a fraudulent misrepresentation in his advice to plaintiffs, since expert testimony from both sides showed mudjacking was indeed a proper procedure for restoring slabs to their original position. We further find that defendant did not have any *legal* duty to inform the Eickmeyers in 1990 of the 1978 repairs. Accordingly, no fraudulent misrepresentation was present.

■ Still to be considered is plaintiff's contention that defendant breached the implied warranty of habitability. The warranty of habitability is a creature of public policy. To establish a breach of warranty of habitability, one must prove that the home had a latent defect caused by improper design, material or workmanship, which rendered the property unsuitable for use as a home. *Naiditch v. Shaf Home Builders, Inc.*, 160 Ill. App. 3d 245, 512 N.E.2d 1027 (1987). In *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 183, 441 N.E.2d 324 (1982), our supreme court held:

> "Like the initial purchaser, the subsequent purchaser is usually not knowledgeable in construction practices and must, to a substantial degree, rely upon the expertise of the person who built the home. If construction of a new house is defective, its repair costs should be borne by the responsible builder-vendor who created the latent defect." *Redarowicz*, 92 Ill. 2d at 183.

Since plaintiffs were subsequent purchasers, defendant's implied warranty of habitability applies to them as well. The *Redarowicz* holding "is limited to latent defects which manifest themselves *within a reasonable time* after the purchase of the house." *Redarowicz*, 92 Ill. 2d at 185.

■ In the case *sub judice*, we ask whether plaintiffs may sue defendant for a latent defect manifesting itself 14 years after the original sale of the house. Since we have found that no fraudulent concealment was present, we find that 14 years is not a reasonable time for the structural defects to become apparent. It is irrelevant at this juncture that plaintiffs purchased the house in 1983. We sympathize with plaintiffs, because it is possible that huge gaps between the walls and the floors, and settlement of a concrete slab over two inches may constitute a home uninhabitable. However, plaintiffs did not file suit until 1991, even after they noticed cracks in the floor in 1984 and observed "structural defects" in 1985 through 1990. We find that plaintiffs' claim is time-barred. Accordingly, we must affirm the ruling of the trial court.

Since we find that the action was time-barred, we do not address the fact that the trial court found soil desiccation as the cause of the soil settlement underneath the concrete slab, especially since two large, mature trees existed in back of the rear of the house. Nor do we address whether defendant met the standard of care in constructing the home.

■ Finally, plaintiffs argue that defendant's actions violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 (West 1992)). Plaintiffs further argue that the trial court's finding to the contrary was against the manifest weight of the evidence. We find that plaintiffs waived this argument.

A point raised but not argued or supported by citation to relevant authority fails to meet the requisites of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) and, therefore, is deemed waived. *Brown v. Tenney*, 125 Ill. 2d 348, 362, 532 N.E.2d 230 (1988). Moreover, we wish to emphasize that "[a] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719, 495 N.E.2d 1132 (1986). Accordingly, any issue not clearly defined and sufficiently presented is also deemed waived. *Vincent v. Doebert*, 183 Ill. App. 3d 1081, 1087, 539 N.E.2d 856 (1989).

In the case at hand, plaintiffs waived this issue since they did not cite to *any* authority supporting their claim that defendant violated the Act by not disclosing the cosmetic repairs previously undertaken in plaintiffs' home. Instead, plaintiffs argue in their brief that the trial judge's ruling that defendant did not violate the Act was clearly against the manifest weight of the evidence because their pleadings on this point had survived a motion to dismiss, a motion for summary judgment, and a motion for a directed verdict. This is not a logical or cohesive argument. Moreover, it was the original owners, not defendant, who sold the house to plaintiffs. Thus, it was an individual, private, noncommercial sale of a house. We note that this court has declined to apply the Act to such an individual sale between a private seller to a private buyer of a single-family residence. See *Strauss v. Cruz*, 259 Ill. App. 3d 608, 631 N.E.2d 468 (1994). Accordingly, as this issue was waived, we affirm the trial court's ruling in this matter.

In light of the foregoing, we affirm the judgment of the trial court.

Affirmed.

CERDA and GALLAGHER,[1] JJ., concur.

---

[1]Justice Gallagher participated fully in the decision of this case, replacing Justice Rizzi, who originally heard the oral argument of this case prior to his retirement. Justice Gallagher has listened to the recordings of the oral argument and reviewed the briefs and the record herein.