BRENDA J. BESSE, Plaintiff-Appellee, v. DEERE AND COMPANY, Defendant-Appellant.

Third District   No. 3—92—0042

Opinion filed November 17, 1992.

J. Sue Myatt, of Bozeman, Neighbour, Patton & Noe, of Moline (Robert J. Noe, of counsel), for appellant.

Jerome Mirza & Associates, Ltd., of Bloomington (David V. Dorris, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Defendant, Deere & Company (Deere), appeals from judgment entered against it for plaintiff, Brenda Besse, in a products liability action. A jury found liability due to the defective design of Deere's cornpicker combine Model No. 7720 and awarded plaintiff damages in the amount of $1,555,000, reduced by 75% for her contributory negligence to $388,750. Defendant moved for judgment notwithstanding the verdict, which was denied by the court, and this appeal ensued. Defendant urges that we reverse the lower court's judgment on grounds that plaintiff failed to prove two essential elements of her cause of action: (1) that the product was unreasonably dangerous; and (2) proximate causation. We affirm.

Plaintiff was age 23 on October 22, 1981, when she was operating the Deere combine with a cornhead attachment on the family farm. Plaintiff had grown up around farm machinery and had driven the combine around the farm on numerous occasions and picked beans with it, but 1981 was the first year that she had actually picked corn with the machinery. On the day in question, the cornhead attachment became clogged with wet corn stalks. Plaintiff descended from the cab without turning the motor off, as she had observed her father do on prior occasions, so that she could manually remove the debris. The gathering chains that pull corn into the cornhead to be stripped were still running, and plaintiff knew that anything that came into contact with them would be pulled into the combine. Although plaintiff tried to position herself so as to avoid the chains, her right pants leg touched the chains as she reached to dislodge the stalks, her leg was pulled into the cornhead, and the leg was amputated above the knee. Plaintiff further testified that, although she could not explain how the contact was made on this occasion, she previously had seen the combine move forward after being placed in neutral.

Subsequent to the accident, plaintiff's brother, Mark, devised a simple seat switch for the cab of the combine which caused the cornhead to stop when the operator left the seat and reactivated the cornhead when the operator resumed the seat. According to Mark, it took him a couple of hours to rig the switch, and it cost under $20.

Testimony admitted at trial for defendant established that the Deere Model No. 7720 combine was designed and manufactured in

1979 before the state of the art in farm implement manufacture incorporated seat switches. According to Deere's witness, the type of switch installed by plaintiff's brother had been studied, but rejected as unsafe for several reasons at the time the 7720 combine was designed. It was not until 1989, after Deere had received reports of accidents in which operators came into contact with moving cornheads, that a seat switch was added by the manufacturer.

By contrast, plaintiff's expert witness, professional engineer John Sevart, testified that the technology of seat switch controls was highly developed at the time the Deere Model No. 7720 was engineered. He further testified that such combines were designed with hydrostatic drives that can cause the combine to creep forward in neutral. Sevart opined that the machinery in question was unreasonably dangerous without a switch that would shut off the cornhead when the operator left the seat of the combine.

At the close of all evidence, defendant moved for a directed verdict on the ground that the inherent dangers of the machinery in question were open and obvious, and that plaintiff was in fact aware of them. Thus, defendant argued, since the machinery worked exactly as it was designed to work, under the "consumer expectation test" there could be no liability on the part of the manufacturer. The trial court rejected defendant's position and denied the motion. In closing argument defense counsel stressed plaintiff's awareness of the dangers the machinery posed and urged the jury to find that she assumed the risk of her own injury. As aforesaid, the jury found liability on the part of the manufacturer, but reduced its award of damages by 75% for plaintiff's own contributory negligence.

In this appeal, defendant initially posits that a product is not "unreasonably dangerous" for purposes of a products liability action if the danger is one that would be contemplated by the ordinary consumer who has ordinary knowledge common to the community as to its characteristics. (See Restatement (Second) of Torts §402A, Comment *i* (1965).) Applying the facts herein, defendant continues, plaintiff has not established the essential element of her cause of action.

■ Plaintiff argues that this narrow test has not been adopted in Illinois. Rather, a broader definition of "unreasonably dangerous" is available to the products liability plaintiff which embraces both the "consumer expectation" test and a "risk/benefit analysis" test. (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 220-21, 412 N.E.2d 959, 964; *Lamkin v. Towner* (1990), 138 Ill. 2d 510, 528, 563 N.E.2d 449, 457.) Under the latter test, a product is unreasonably dangerous when the evidence establishes that the product "could have

been designed to prevent a foreseeable harm without hindering its function or increasing its price." (*Palmer*, 82 Ill. 2d at 220.) Otherwise stated, plaintiff may establish liability if she proves "that the product's design proximately caused his[/her] injury and defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." (*Lamkin*, 138 Ill. 2d at 529.) The two tests are not mutually exclusive and generally should be applied together except where the nature of the danger is particularly obvious and the mechanism itself is particularly simple. (See *Scoby v. Vulcan-Hart Corp.* (1991), 211 Ill. App. 3d 106, 569 N.E.2d 1147 (applying the consumer expectation test alone to cause of action arising from burns plaintiff suffered when he fell into an open deep-fat fryer).) We agree that plaintiff correctly states the law of Illinois.

The evidence in this case presented a factual question of whether the product was unreasonably dangerous when analyzed under the integrated consumer expectation test and risk/benefit analysis test. That question was decided by the jury in the affirmative and is not contrary to the manifest weight of the evidence.

■■ There is no dispute that the danger inherent in the moving parts of the cornhead was open and obvious to the ordinary consumer/operator. However, this fact does not end the inquiry because plaintiff presented evidence that her injury could have been prevented with a design modification that would not have hindered the combine's function. Also, as aforesaid, plaintiff introduced expert and lay testimony relative to the combine's propensity to move forward in neutral and the utility of a simple, inexpensive seat switch which would turn the machinery off to prevent foreseeable injury to the operator. Plaintiff's brother testified that his idea to install a seat switch on the combine after plaintiff's accident was inspired by his familiarity with a riding mower that the family had in 1980. The mower was also manufactured by Deere and was a couple of years old at the time of plaintiff's accident. Thus, plaintiff established that the technology needed to prevent the type of injury she suffered was not unavailable to defendant in 1979.

Defendant's witnesses testified that seat switches had been studied in 1979, but not integrated into the design of its Model 7720 combine because of various safety-related concerns which were explained to the jury. Defendant's witnesses further testified that other farm implement manufacturers had not installed seat switches in their combines in 1979. In fact, it was not until 10 years later, after receiving

reports of this and other accidents involving cornhead attachments, that defendant added a seat switch to its combines.

■ Obviously, the combine-with-attached-cornhead mechanism involved in this case is not so simple in nature as to preclude application of the risk/benefit analysis test. Under that test the jury in this case could find based on the evidence that the benefits of not installing a seat switch in Model No. 7720 in 1979 did not outweigh the risk of danger inherent in the machinery. Accordingly, we find no error in the trial court's denial of defendant's motions for a directed verdict and for judgment notwithstanding the verdict based solely on application of the consumer expectation test.

Similarly, we reject defendant's argument that plaintiff failed to sustain her burden of proof of proximate causation. Defendant contends that it was not a defective product, but a defective plaintiff that proximately caused the injury complained of in this case. This premise is an outgrowth of defendant's primary position that plaintiff was knowledgeable about the dangers posed by the moving parts of the cornhead when she approached it to remove the clogged corn stalks. Defendant contends that the jury's verdict is contrary to the manifest weight of the evidence because the degree of her assumption of the risk of injury was 100%, not 75% as found by the jury.

In this State, liability may be found whether the defective design of defendant's product is the sole or a contributing cause of plaintiff's injury. (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) Plaintiff's comparative fault or assumption of the risk does not bar recovery, but reduces an award of damages. In this case, in addition to evidence of the inherent danger of the cornhead mechanism, there was also other evidence that the combine was designed such that it could creep forward in neutral, and that it was foreseeable that this could bring the cornhead in contact with an operator who had initially positioned himself at a safe distance from the gathering chains to remove debris. This danger was neither open nor obvious, even though plaintiff in this case admitted that she had observed the phenomenon on one or more occasions prior to her accident.

■ In our opinion, the evidence presented a factual question of proximate causation for the jury. The jury's verdict finding plaintiff 75% contributorily negligent supports defendant's theory that plaintiff's own carelessness was the primary proximate cause of her injury. The evidence, however, supports as well the jury's verdict that the machinery's defective design rendered plaintiff's injury foreseeable and was a proximate cause. In sum, we hold that the trial court did not err in denying defendant's motions for a directed verdict and for

judgment notwithstanding the verdict based on insufficient evidence of proximate causation.

For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

Affirmed.

McCUSKEY and SLATER, JJ., concur.