LISA WORTEL, Plaintiff-Appellant, v. SOMERSET INDUSTRIES, INC., Defendant-Appellee.

First District (6th Division)    No. 1—00—3983

Opinion filed May 24, 2002.—Rehearing denied June 12, 2002.

898

O'MARA FROSSARD, J., specially concurring in part and dissenting in part.

Kralovec & Marquard, Chtrd., of Chicago (William E. Spizzirri and Michael T. Sprengnether, of counsel), for appellant.

Jack T. Riley, of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Kelly N. Warnick, of counsel), for appellee.

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Lisa Wortel, appeals from the trial court's order granting summary judgment entered against her in favor of defendant, Somerset Industries. We reverse and remand. In this opinion, we clarify that the existence of an open and obvious danger is not a *per se* bar to finding that a product is unreasonably dangerous because of defective design so as to subject a manufacturer to liability.

Facts

On May 13, 1996, plaintiff was injured at work when her left hand became caught in the rollers of a pizza dough rolling machine designed and manufactured by the defendant. On June 6, 1997, plaintiff filed a two-count complaint against defendant.

In count I of her complaint, plaintiff alleged that defendant was negligent in one or more of the following ways:

"a. Carelessly and negligently failed to provide a proper and adequate safety system on said machine;

b. Carelessly and negligently failed to provide proper and adequate warnings to notify users of various dangers associated with the machine; and,

c. Carelessly and negligently designed said machine in a manner so as to allow a machine user to cause her hand to come into contact with the machine's rollers while the machine is in operation."

In count II of her complaint, plaintiff alleged strict liability against defendant, claiming that the following conditions rendered the pizza dough rolling machine unreasonably dangerous:

"a. It was designed, manufactured, sold or otherwise placed in the stream of commerce with an inadequate safety system;

b. It was designed, manufactured, sold or otherwise placed in the

stream of commerce with inadequate warnings concerning the safe operation of the machine; and,

    c. It was designed, manufactured, sold or otherwise placed in the stream of commerce in a manner which allowed the user of said machine to expose the user's limb to the roller portions of the machine while the machine remained in operation."

In moving for summary judgment, defendant argued that any claimed danger regarding its pizza dough rolling machine was open and obvious and, therefore, could not be deemed unreasonably dangerous or defective and there also was no need to warn of such an open and obvious danger. After full briefing by the parties, the trial court granted defendant's motion for summary judgment.

## Standard of Review

■ Because the trial court, when deciding a motion for summary judgment, makes a determination as a matter of law, the trial court's decision is entitled to no deference. *Jarke v. Jackson Products*, 258 Ill. App. 3d 718, 721, 631 N.E.2d 233, 236 (1994). Our review of the summary judgment granted to defendant is *de novo. Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 30, 719 N.E.2d 756, 764 (1999). Although summary judgment can aid in the expeditious disposition of a lawsuit, it is a drastic measure that should be allowed only "when the right of the moving party is clear and free from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986). Summary judgment is properly granted where the pleadings, depositions, admissions, affidavits and exhibits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Petrovich*, 188 Ill. 2d at 30-31, 719 N.E.2d at 764. A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those undisputed facts. *Petrovich*, 188 Ill. 2d at 31, 719 N.E.2d at 764. At the summary judgment stage, a plaintiff is not required to establish his case as he would at trial, but he must present some factual basis that would arguably entitle him to a judgment. *West v. Deere & Co.*, 145 Ill. 2d 177, 182, 582 N.E.2d 685, 687 (1991).

■ "A defendant who moves for summary judgment may meet its initial burden of production in at least two ways: (1) by affirmatively disproving the plaintiff's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law (traditional test) [citation], or (2) by establishing that the nonmovant lacks sufficient evidence to prove an essential element of the cause of action (*Celotex* test) [citations]." *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688-89, 737 N.E.2d 662 (2000).

■ The *Williams* court further explained that it is the *movant* who bears the burden of persuasion and the initial burden of production. *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 737 N.E.2d 662 (2000). Thus, where a defendant is the movant, *it is only when the defendant satisfies its initial burden of production that the burden shifts to the plaintiff to present some factual basis* that would arguably entitle her to a judgment under the applicable law. *Williams*, 316 Ill. App. 3d at 689, 737 N.E.2d at 668. Here, because defendant failed to satisfy its initial burden, it was not entitled to summary judgment. Contrary to the dissent's view, no burden shifted to the plaintiff. Moreover, contrary to the dissent's statements, plaintiff here *did* present a factual basis that would arguably entitle her to a judgment. *West v. Deere & Co.*, 145 Ill. 2d 177, 182, 582 N.E.2d 685, 687 (1991); *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 737 N.E.2d 662 (2000).

## Strict Liability

■ The Illinois Supreme Court set forth the elements of an action sounding in strict liability in *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182 (1965). A plaintiff in a strict liability case must prove that a product was in an unreasonably dangerous condition, that the condition existed at the time it left the manufacturer's control, and that the condition was a proximate cause of the plaintiff's injury. *Suvada*, 32 Ill. 2d at 623, 210 N.E.2d at 188.[1] Ordinarily, the determination of whether a product is defective, and therefore unreasonably dangerous, is a question of fact for the jury. *Korando v. Uniroyal Goodrich Tire Co.*, 159 Ill. 2d 335, 344, 637 N.E.2d 1020, 1024 (1994); see also *Doser v. Savage Manufacturing & Sales, Inc.*, 142 Ill. 2d 176, 196, 568 N.E.2d 814, 823 (1990) (noting that whether product is unreasonably dangerous for failure to incorporate safety devices is question of fact that jury should resolve).

---

[1] In Illinois, a manufacturer is under a nondelegable duty to produce a product that is reasonably safe. *Anderson v. Hyster Co.*, 74 Ill. 2d 364, 368, 385 N.E.2d 690 (1979). Thus, "the breach of duty is the same in both a negligence and strict products liability claim, but the key distinction between a negligence claim and a strict liability claim lies in the fault concept." *Phillips v. United States Waco Corp.*, 163 Ill. App. 3d 410, 417, 516 N.E.2d 670, 674 (1987). Plaintiff's complaint contained both a negligence count and a strict liability count. Although the "open and obvious" doctrine has been applied in both negligence claims and strict liability claims, and although the motion for summary judgment mentions both counts, the focus of the argument was on strict liability. No significant distinction has been made in the parties' briefs in this appeal. Accordingly, we shall address the issues raised in this appeal in the same manner.

Consumer Expectation Test

■ In *Hunt v. Blasius*, 74 Ill. 2d 203, 212, 384 N.E.2d 368, 372 (1978), the Illinois Supreme Court determined that an exit sign post without a "break-away" design contained no legally cognizable defect, as there were no facts indicating that the post subjected motorists to any unexpected risks. In so doing, the court relied on section 402A of the Restatement (Second) of Torts and pronounced that strict liability applies *only* when a product is " 'dangerous to an extent beyond that which would be contemplated by the ordinary [person] ***, with the ordinary knowledge common to the community as to its characteristics.' " (Emphasis omitted.) *Hunt v. Blasius*, 74 Ill. 2d at 211-12, 384 N.E.2d at 372, quoting Restatement (Second) of Torts § 402A, Comment *i* (1965). This simple test has come to be known as the consumer contemplation test or the consumer expectation test. See W. Keeton, Prosser & Keeton on Torts § 99, at 698-99 (5th ed. 1984). Defendant, in its motion for summary judgment, citing *Hunt v. Blasius* and two other cases, relied exclusively on the consumer expectation test.

Under the consumer expectation test, "[i]njuries are not compensable *** if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product." *Hunt v. Blasius*, 74 Ill. 2d at 211, 384 N.E.2d at 372, citing *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 467, 343 N.E.2d 465 (1976). Moreover, courts have decided that no warning is required when a danger is obvious. *McColgan v. Environmental Control Systems, Inc.*, 212 Ill. App. 3d 696, 701, 571 N.E.2d 815, 818 (1991). The rationale for this rule is that nothing of value is gained by a warning where a danger is open and obvious and generally appreciated. *McColgan*, 212 Ill. App. 3d at 701, 571 N.E.2d at 818.

Plaintiff argues that the specific danger here was not open and obvious. Although it would appear that plaintiff's injury derived from the inherent property of the product, which was obvious to all, namely, to "pull" items "forward toward the rollers," whether the items were pieces of dough, long sleeves, hair or, in the instant case, fingers, plaintiff argues that she did not expect, nor would any user, that a slight nudge of the dough would result in her fingers being dragged with the dough into the rollers because the combination of speed and rotational force upon viscous dough is not readily apparent. Plaintiff contends that the open and obvious risk described by the defendant is not the risk which precipitated plaintiff's injuries. Plaintiff distinguishes the general risk of the rollers when placing one's hand deep enough into the machine so as to put it into "the depths of the location of the rollers," from the specific risk of placing one's hand into the machine not as close to the rollers and having the hand "dragged

into" the rollers by the dough. Broken down to its essence, plaintiff's contention is that, despite the open and obvious risk of the rollers, the exact speed and force of the rollers could not be appreciated.

■ Although defendant has argued that "the risk of injury" was open and obvious, and further argued that plaintiff was subjectively aware of the risk, defendant has not directly addressed plaintiff's argument regarding the existence of two distinct risks. We cannot say that the specific risk encountered by plaintiff of having one's hand pulled unexpectedly into this machine after nudging the end of a piece of dough was, as a matter of law, open and obvious. A question of fact exists as to whether the dragging effect of the rollers caused by their speed and force presented an unexpected risk beyond those which would be contemplated by the average person. *Hunt v. Blasius*, 74 Ill. 2d at 211-12, 384 N.E.2d at 372. Because we conclude that there is a question of fact as to whether the risk here was open and obvious, defendant was not entitled to summary judgment on this basis.

More importantly, and a point that we believe is greatly in need of clarification, is that defendant's motion for summary judgment, as to plaintiff's allegations of defective design,[2] failed as a matter of law, *regardless* of whether the risk of injury was open or obvious. With the possible exception of a "simple" product (see *Hansen v. Baxter Health-care Corp.*, 198 Ill. 2d 420 (2002); *Scoby v. Vulcan-Hart Corp.*, 211 Ill. App. 3d 106, 109-10, 569 N.E.2d 1147, 1149-50 (1991)), which is not the situation here, the open and obvious nature of the risk is not a *per se* bar to recovery in a design defect case. The consumer expectation test is not the exclusive test to be applied in a design defect case; Illinois permits a plaintiff an alternative method of proving an "unreasonably dangerous" design. In granting defendant's motion for summary judgment, the trial court applied only the consumer expectation analysis that was raised in defendant's motion and incorrectly decided that the open and obvious nature of the risk at issue precluded recovery.

## Risk-Utility Test

■ In 1990, the Illinois Supreme Court explained that, under Illinois law, "[a] plaintiff may demonstrate that a product is defective in design, so as to subject a *** manufacturer to strict liability for resulting injuries, in one of two ways: (1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner *or*

---

[2]Plaintiff alleged that the product here was unreasonably dangerous based on both defective design and failure to warn. Our discussion is limited to the design defect theory. Because we have determined that the risk was not open and obvious, we need not further address the failure to warn allegations.

(2) by introducing evidence that the product's design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." (Emphasis added.) *Lamkin v. Towner*, 138 Ill. 2d 510, 529, 563 N.E.2d 449, 457 (1990), citing generally *Palmer v. Avco Distributing Corp.*, 82 Ill. 2d 211, 219-20, 412 N.E.2d 959 (1980), in turn citing *Barker v. Lull Engineering Co.*, 20 Cal. 3d 413, 427-28, 573 P.2d 443, 452, 143 Cal. Rptr. 225, 234-35 (1978). Thus, it has been clear since 1990, under Illinois law, a plaintiff has had two alternative methods to prove a manufacturer's liability for defective design. The second risk-benefit balancing test identified in *Lamkin v. Towner* has been referred to as the risk-utility or risk-benefit test. See *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420 (2002).[3]

Shortly before the Illinois Supreme Court expressly adopted the risk-utility test in design defect cases in *Lamkin v. Towner*, the implicit adoption of the similar test "expressly pretermitting the issue of feasible alternative design" in such cases was recognized by Justice Buckley in his dissenting opinion in *Kutzler v. AMF Harley-Davidson*, 194 Ill. App. 3d 273, 281, 550 N.E.2d 1236, 1241 (1990) (Buckley, P.J., dissenting). In his dissent, he acknowledged that "[t]he 'consumer contemplation test' has been subject to wide criticism by courts and commentators for its inadequacy as a test for evaluating whether a product is defective in design defect cases." *Kutzler*, 194 Ill. App. 3d at 280, 550 N.E.2d at 1240 (Buckley, P.J., dissenting). More recently, one court noted that at least 24 states have now adopted some form of the risk-utility test for determining strict liability design defects as a result of the continued legal criticism of the consumer expectation test. See *Halliday v. Sturm, Ruger & Co.*, 138 Md. App. 136, 176, 770 A.2d 1072, 1095-96 (2001) (Sonner, J., dissenting, joined by Hollander, J.).

Prior to *Lamkin v. Towner*, Illinois Supreme Court cases such as *Palmer v. Avco Distributing Corp.*, 82 Ill. 2d 211, 412 N.E.2d 959 (1980), *Kerns v. Engelke*, 76 Ill. 2d 154, 390 N.E.2d 859 (1979), and *Anderson v. Hyster Co.*, 74 Ill. 2d 364, 385 N.E.2d 690 (1979), had ad-

---

[3]Other descriptions include risk/benefit analysis (*Hansen v. Baxter Healthcare Corp.*, 309 Ill. App. 3d 869, 884, 723 N.E.2d 302, 314 (1999); *Besse v. Deere & Co.*, 237 Ill. App. 3d 497, 500-01, 604 N.E.2d 998, 1001 (1992); *Faucett v. Ingersoll-Rand Mining & Machinery Co.*, 960 F.2d 653, 655 (7th Cir. 1992)), and danger/utility test (*Jarke v. Jackson Products*, 258 Ill. App. 3d 718, 726 n.1, 631 N.E.2d 233, 240 n.1 (1994); *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.*, 223 Ill. App. 3d 444, 456, 585 N.E.2d 166, 173 (1991); *Scoby v. Vulcan-Hart Corp.*, 211 Ill. App. 3d 106, 109-10, 569 N.E.2d 1147, 1149-50 (1991)).

dressed only some aspects of the risk-utility test, such as feasibility of alternative designs. Thus, although evidence of a feasible design alternative is sometimes used to describe the risk-utility test, it is but one of several factors in the risk/benefit analysis. As the *Barker* court explained, "in evaluating the adequacy of a product's design pursuant to [the risk-utility test], a jury may consider, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Barker*, 20 Cal. 3d at 431, 573 P.2d at 455, 143 Cal. Rptr. at 237.

■ One commentator has listed factors that might be considered by the jury under the risk-utility test as follows:

"(1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.

(2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.

(3) The availability of a substitute product which would meet the same need and not be as unsafe.

(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

(5) The user's ability to avoid danger by the exercise of care in the use of the product.

(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance." J. Wade, *On The Nature of Strict Tort Liability for Products*, 73 Miss. L. J. 825, 837-38 (1973).

See also *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.*, 223 Ill. App. 3d 444, 454-55, 585 N.E.2d 166, 172-73 (1991).

■ The risk-utility test has also been described as follows:

" 'Under this approach, a product is defective as designed if, but only if, the magnitude of the danger outweighs the utility of the product. The theory underlying this approach is that virtually all products have both risks and benefits and that there is no way to go about evaluating design hazards intelligently without weighing danger against utility. There have been somewhat different ways of articulating this ultimate standard or test. But in essence, the danger-utility test directs attention of attorneys, trial judges, and juries to the necessity for weighing the danger-in-fact of a particu-

lar feature of a product against its utility. Under this test, a product can be said to be defective in the kind of way that makes it "unreasonably dangerous" if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. There are three primary reasons for so concluding: (1) the harmful consequences in fact from intended and reasonably foreseeable uses resulting from the way the product was designed and marketed up to the time of plaintiff's injury outweighed the benefits in terms of wants, desires, and human needs served by the product; (2) although the harmful consequences in fact did not exceed the benefits, alternative products were available to serve the same needs or desires with less risk of harm; (3) although the harmful consequences did not outweigh the benefits, there was a feasible way to design the product with less harmful consequences. Most of the products liability litigation related to design hazards has been concerned with the feasibility of a safer alternative design.' " *Scoby v. Vulcan-Hart Corp.*, 211 Ill. App. 3d 106, 110, 569 N.E.2d 1147, 1150 (1991), quoting W. Keeton, Prosser & Keeton on Torts § 99(3), at 699-700 (5th ed. 1984).

In moving for summary judgment and arguing that there was no issue for a jury to decide, defendant failed to show that plaintiff would be unable to prove her design defect case by way of a risk-utility analysis; defendant did not address this alternative method of proof at all. Nonetheless, defendant now asserts that plaintiff has waived the risk-utility argument. We disagree.

In arguing that it was entitled to judgment as a matter of law under *Hunt v. Blasius*, defendant failed to realize that the existence of an open and obvious danger is not a *per se* bar to finding that a complex product, such as its pizza dough rolling machine, is unreasonably dangerous so as to subject a manufacturer to liability. Defendant relied exclusively on the consumer expectation test and failed to acknowledge that a plaintiff may now prove a design defect by way of a risk-utility analysis, the alternative method of proof recognized by *Lamkin v. Towner*.

In 1997, one court acknowledged the import of *Lamkin v. Towner*, noting that although other states had adopted *Barker*-type alternative tests, Illinois was one of only three jurisdictions[4] that had adopted the *burden-shifting* risk-utility inquiry of *Barker v. Lull.* See *Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 212-13, 694 A.2d 1319, 1329-30 (1997) (containing comprehensive jurisdictional overview of

---

[4]The other two states include Alaska (*Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 884 (Alaska 1979)) and Hawaii (*Ontai v. Straub Clinic & Hospital, Inc.*, 66 Haw. 237, 243, 659 P.2d 734, 740 (1983)).

risk-utility test). It has been noted by one commentator, and we agree, that the adoption of a risk-utility analysis by a court actually increases the defendant's burden on summary judgment because the defendant must show that, by balancing the product's risk against its utility, the lack of a defect is plain and indisputable. See 2 Am. L. Prod. Liab. § 28:16 (3d rev. ed. 1997). Defendant, by relying only on a consumer-expectation analysis, failed to do so. Thus, at the outset, defendant failed to meet its burden of showing it was entitled to judgment as a matter of law.

Defendant's waiver argument shows that it misapprehends the burden placed upon a party who moves for summary judgment and also misunderstands that *Lamkin v. Towner*'s adoption of the risk-utility analysis as a way a plaintiff can now *prove* design defect has actually increased this burden. Contrary to the dissent's view, we do not believe that *Lamkin v. Towner* imposed a burden on a plaintiff to choose and disclose which method of proof she shall use at trial. 331 Ill. App. 3d at 915 ("the plaintiff, in the context of this case, should be required to disclose whether she is relying on risk utility as a method of proving design defect").

It is true that the thrust of plaintiff's response to defendant's motion for summary judgment was that the risk from defendant's machine was not "open and obvious." This was a natural response because the sole basis of defendant's motion for summary judgment was that its machine could not be deemed unreasonably dangerous, as a matter of law, because the risk of injury from its product was open and obvious. While it may have been helpful to the court below had plaintiff more fully developed the risk-utility argument or better addressed the risk-utility test with citation to *Lamkin v. Towner* or any other case applying the risk-utility test, this was not plaintiff's burden where defendant failed to meet its burden in the first instance. Moreover, as we have already noted, plaintiff here did present a factual basis that would arguably entitle her to a judgment and this is the *only* burden a plaintiff ever has at the summary judgment stage. We do not believe that a plaintiff "waives" at summary judgment a "method of proof."

"The rule of waiver is, of course, a limitation on the parties and not the courts." *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 514, 639 N.E.2d 1273 (1994). "[T]his court is not precluded from considering issues not properly preserved by the parties, and *indeed has 'the responsibility* *** for a just result and for the maintenance of a sound and uniform body of precedent [that] may sometimes override the considerations of waiver that stem from the adversary character of our system.' [Citation.]" (Emphasis added.) *Jackson Jordan, Inc. v.*

*Leydig, Voit & Mayer*, 158 Ill. 2d 240, 251, 633 N.E.2d 627, 631 (1994); see also *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480, 584 N.E.2d 116, 118-19 (1991) (same). Defendant, as well as the trial court by granting summary judgment, incorrectly believed that the existence of an open and obvious danger constituted a *per se* bar to finding that a product is unreasonably dangerous. This error makes it incumbent upon this court to address the issue. We believe that our resolution of this issue is necessary in the interests of justice and to maintain a uniform body of precedent on this point. We are more certain of our need to clarify this area because defendant has presented an argument on appeal that is legally flawed, but also because of the dissent's concerns about the confusion surrounding the application of the risk-utility test at the summary judgment stage. 331 Ill. App. 3d at 915.

While the open and obvious nature of a risk may preclude recovery in design defect cases under the consumer expectation test, it is just one of several factors to be considered by the jury under the risk-utility test. Defendant nonetheless, citing only *Scoby v. Vulcan-Hart Corp.*, 211 Ill. App. 3d 106, 109, 569 N.E.2d 1147, 1151 (1991), and *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1411-12 (7th Cir. 1994) (applying Illinois law), states in its brief that "where the alleged danger is obvious, the risk utility test is not applicable."[5] Because this state-

---

[5]Although not cited by defendant, we have discovered through our own research an unpublished opinion that contains not only the same *verbatim* statement, but also contains defendant's *verbatim* argument that "The trial court [in *Scoby*] granted defendant's motion for summary judgment finding that the 'dangerous nature of the open fryer was ... so obvious that, as a matter of law, plaintiff could not recover.' [Citation.]" What defendant failed to realize was that this statement did not appear in that portion of *Scoby* which addressed the risk-utility test. Indeed, the very next sentence in the *Scoby* case states as follows: "The criterion used by the [trial] court was the consumer-user contemplation test set forth in section 402A of the Restatement (Second) of Torts. (See Restatement (Second) of Torts § 402A, comment *i* (1965).)" *Scoby*, 211 Ill. App. 3d at 109, 569 N.E.2d at 1149. It was only after this discussion of the consumer expectation test that the *Scoby* court went on to address the applicability of the risk-utility test. Perhaps defendant's confusion comes from its obvious reliance on the flawed analysis in the *unpublished* opinion. We believe that it is incumbent upon attorneys to perform their own analysis of those cases upon which they purport to rely, especially before they adopt—wholesale—another court's analysis of a case. Defendant should have better reviewed the *Scoby* holding, as well as other cases explaining the *Scoby* holding such as *Besse v. Deere & Co.*, 237 Ill. App. 3d 497, 604 N.E.2d 998 (1992), particularly where, as here, the statements which were taken from the unpublished opinion were mere *dicta*.

ment omits an additional factor considered by the courts in *Scoby* and *Todd*, namely, that the product be "simple," defendant's statement is simply wrong. Defendant has obviously misinterpreted *Scoby*. To further complicate matters, however, plaintiff has effectively ignored defendant's contention, albeit erroneous, and has made no attempt to clarify or distinguish *Scoby* or *Todd*. This court has reminded counsel that a reviewing court is entitled to have issues clearly defined with relevant authority cited and a cohesive legal argument presented because the appellate court is not a depository in which the appellant may dump the burden of argument and research. *Eickmeyer v. Blietz Organization, Inc.*, 284 Ill. App. 3d 134, 144, 671 N.E.2d 795, 802 (1996).

■ When, if ever, may a court determine that the risk-utility test is inapplicable as a matter of law? In *Scoby*, one of the few appellate court cases interpreting *Lamkin v. Towner*, the court carved out an exception to the applicability of the risk-utility test. The *Scoby* court, in affirming the trial court's grant of summary judgment in favor of the manufacturer of a deep-fat fryer, stated as follows:

> "We do not deem that *Lamkin* or other cases applying aspects of the danger-utility test intend that all manufacturers of products described above should be subject to liability depending upon a trier of fact's balancing under that test, when suit is brought by one injured by such a product. Somewhere, a line must be drawn beyond which the danger-utility test cannot be applied. Considering *not only the obvious nature* of any danger here *but, also, the simple nature* of the mechanism involved, we conclude the circuit court properly applied only the consumer-user contemplation test." (Emphasis added.) *Scoby*, 211 Ill. App. 3d at 112, 569 N.E.2d at 1151.

At the time *Scoby* was decided, at least one other jurisdiction, Michigan, had made a distinction between "simple" and complex tools or products for purposes of applying the open and obvious danger rule in product liability cases and had applied the rule in cases involving simple tools but had rejected the rule in cases involving more complex products. See T. Kruk, *Products Liability: Modern Status of Rule That There Is No Liability for Patent or Obvious Dangers*, 35 A.L.R.4th 861 (1985).

■ The *Lamkin v. Towner* court did not indicate that there was a limitation on the applicability of the risk-utility test, even though the product involved there was an arguably "simple" window screen. More recently, however, the Illinois Supreme Court addressed the *Scoby* court's exception to the risk-utility test in the case of a simple

product. *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420 (2002). The defendant in *Hansen* argued that a risk-utility analysis was inappropriate "because the device in question is simple and because the risks are well-known to the medical community that uses the device." *Hansen*, 198 Ill. 2d at 436. The court, in rejecting the defendant's argument, found *Scoby* inapposite, noting that there was no rational comparison between the product in issue, which was a friction-fit connector used to connect an IV tube to a catheter and the product in *Scoby*, which was a kettle of boiling oil. *Hansen*, 198 Ill. 2d at 437-38; see also *Besse v. Deere & Co.*, 237 Ill. App. 3d 497, 502, 604 N.E.2d 998, 1002 (1992) (in which this court determined that a cornpicker combine with an attached cornhead mechanism was "not so simple in nature as to preclude application of the risk/benefit analysis test"). We find *Scoby* inapposite. Defendant has not argued nor can it be said that the pizza dough rolling machine here is simple; it is a complex machine. Thus, defendant's assertion that the risk-utility test is inapplicable in the present case is incorrect.

█ Contrary to defendant's assertion, even where an alleged danger from a product is obvious, the risk utility test is applicable. Indeed, it has been explained:

> "One shortcoming of the [consumer expectation] test is that a victim could never recover for harm suffered as a result of a design hazard that was open or obvious, resulting in products not being found defective where they could easily have been designed safer without great expense or effect on the benefits or functions to be served by the product. [Citation.] This, as well as other deficiencies, prompted many jurisdictions to adopt in design defect cases an alternative approach to determining whether a product is unreasonably dangerous ***. [Citations.]" *Kutzler*, 194 Ill. App. 3d at 280, 550 N.E.2d at 1240 (Buckley, P.J., dissenting).

In *Harnischfeger*, although discussing the issue of open and obvious as it related to a duty to warn in a negligence action, the court explained that a "risk/benefit or danger/utility test *** obviously encompasses many more considerations than the relatively simple consumer-expectation test." *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.*, 223 Ill. App. 3d 444, 456, 585 N.E.2d 166, 173-74 (1991).

As the *Scoby* court noted, in discussing the adoption in *Lamkin v. Towner* of the dual test for determining defective design, the *Lamkin v. Towner* court relied heavily on the decision of the Supreme Court of California in *Barker*, 20 Cal. 3d 413, 573 P.2d 443, 143 Cal. Rptr. 225. As the *Barker* court explained:

> "[T]he expectations of the ordinary consumer cannot be viewed as the exclusive yardstick for evaluating design defectiveness

because '[i]n many situations ... the consumer would not know what to expect, because he would have no idea how safe the product could be made.' [Citation.] Numerous California decisions have implicitly recognized this fact and have made clear, through varying linguistic formulations, that a product may be found defective in design, even if it satisfies ordinary consumer expectations, if through hindsight *the jury determines* that the product's design embodies 'excessive preventable danger,' or, in other words, if *the jury finds* that the risk of danger inherent in the challenged design outweighs the benefits of such design. [Citation.]" *Barker*, 20 Cal. 3d at 430, 573 P.2d at 454, 143 Cal. Rptr. at 236.

As *Lamkin v. Towner* clearly explained, the second method by which a plaintiff can show a design defect is "by introducing evidence that the product's design proximately caused his injury and the *defendant fails to prove* that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." (Emphasis added.) *Lamkin v. Towner*, 138 Ill. 2d at 529, 563 N.E.2d at 457. The importance of this pronouncement, by which Illinois adopted *Barker*'s burden-shifting approach (see *Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 212-13, 694 A.2d 1319, 1329-30 (1997)), was noted earlier.

In casting the burden of proof in design cases upon the manufacturer, the *Barker* court explained:

"Because most of the evidentiary matters which may be relevant to the determination of the adequacy of a product's design under the 'risk-benefit' standard[,] *e.g.*, the feasibility and cost of alternative designs are similar to issues typically presented in a negligent design case and involve technical matters peculiarly within the knowledge of the manufacturer, we conclude that once the plaintiff makes a *prima facie* showing that the injury was proximately caused by the product's design, the burden should appropriately shift to the defendant to prove, in light of the relevant factors, that the product is not defective." *Barker*, 20 Cal. 3d at 431, 573 P.2d at 455, 143 Cal. Rptr. at 237.

■ Plaintiff responded to defendant's motion by arguing that the issue regarding whether defendant's machine was defective is a question of fact for a jury. Plaintiff retained a mechanical engineer, Ronald Lobodzinski, who presented himself for deposition by defendant prior to the trial court's ruling on defendant's motion for summary judgment. Mr. Lobodzinski, among other things, criticized the design of the feed opening on the machine, based upon the distance of the opening from the pinch point. He opined that the machine should provide guarding to prevent contact with the pinch-point hazard, and if guarding could not be achieved, a warning should be used. He also offered

evidence of alternative designs, including that of one of defendant's competitors, which would have eliminated the risk to which plaintiff was exposed. All of this evidence is related to the risk-utility method of proving a design defect. In her response, plaintiff included Mr. Lobodzinski's opinions and clearly contended that she "has produced evidence that safer, alternative designs were available for that type of machine long before the design of the machine at issue in this case." In view of this evidence, plaintiff clearly did not waive the risk-utility "argument."

More importantly, defendant did not directly challenge these opinions or offer any evidence to refute these opinions. Because doing so may have served only to create a genuine issue of material fact, we question the need for the dissent's advisory statement that "If plaintiff intends to utilize [the risk-utility test as a] method of proof, then the defendant should be given the opportunity to move for summary judgment in the context of the risk-utility test." 331 Ill. App. 3d at 915.

■ We further disagree with the dissent's proposed directive to the trial court regarding how to resolve such a defense motion based on the risk-utility test and the requirement that there be a question of fact "as to whether there was a reasonable and safer alternative design at the time of the manufacture of the product." 331 Ill. App. 3d at 915. In 1979, the Illinois Supreme Court left open the question of whether a plaintiff must prove alternative design feasibility. *Kerns*, 76 Ill. 2d at 163-64, 390 N.E.2d at 863-64. This court later held: "In light of the *Kerns* decision, and until the Illinois Supreme Court determines otherwise, we believe the rule of law in Illinois is that evidence of alternative design feasibility is relevant and admissible in a design defect case, but it is not an essential element of such a case if the finder of fact can be persuaded in the absence of such evidence that the defect in design rendered the product unreasonably dangerous." *Seward v. Griffin*, 116 Ill. App. 3d 749, 766, 452 N.E.2d 571, 558 (1983). The test introduced in 1990 by the Illinois Supreme Court in *Lamkin v. Towner* specifically requires the *defendant* "to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." *Lamkin v. Towner*, 138 Ill. 2d at 529, 563 N.E.2d at 457. Thus, we conclude, contrary to the dissent, that there is no requirement that a plaintiff must present evidence of a feasible alternative design in order to survive summary judgment.

## Conclusion

■ Based on the foregoing, the trial court erroneously granted summary judgment to defendant. The sum and substance of defendant's motion for summary judgment was that, pursuant to *Hunt v.*

*Blasius*, as a matter of law, its product, a pizza dough rolling machine, could not be deemed unreasonably dangerous because the risk of injury from the machine was open and obvious. This simple statement, standing alone, no longer represents an accurate statement of strict products liability law in Illinois, pursuant to the Illinois Supreme Court's 1990 decision in *Lamkin v. Towner*. We hold, therefore, that the existence of an open and obvious danger is not a *per se* bar to finding that a product is unreasonably dangerous, based upon defective design, so as to subject a manufacturer to liability. Accordingly, the decision of the circuit court of Cook County granting summary judgment to defendant is reversed and this cause is remanded.

Reversed and remanded.

BUCKLEY, J., concurs.

JUSTICE O'MARA FROSSARD, specially concurring in part and dissenting in part:

I agree with the following conclusions reached by the majority: (1) "the existence of an open and obvious danger is not a *per se* bar to finding that a product is unreasonably dangerous, based upon defective design, so as to subject a manufacturer to liability" (331 Ill. App. 3d at 912); and (2) there is a question of fact as to whether the risk here was open and obvious, and, therefore, defendant was not entitled to summary judgment under the consumer expectation test (331 Ill. App. 3d at 902). However, regarding the risk-utility test, I do not agree with the majority's conclusion that "plaintiff here *did* present a factual basis that would arguably entitle her to a judgment." (Emphasis in original.) 331 Ill. App. 3d at 900. On that basis, I respectfully dissent.

The defendant's theory on summary judgment was that the risk of injury to plaintiff was open and obvious, and, therefore, the product could not be unreasonably dangerous and there was no duty to warn. The defendant's summary judgment motion was based on a consumer expectation analysis, not a risk-utility analysis. In the context of risk utility, the record does not reflect evidence of how the design of the machine could have been altered to create a safer machine or any evidence of the form and feasibility of an alternative machine design. In the context of risk utility, no evidence was produced by plaintiff or defendant during the course of the summary judgment hearing that demonstrated: (1) the product is defective and unreasonably dangerous because a safer design for the product is practical and effective; (2) a safer design for the product can be provided at a reasonable cost; (3) the risk of danger inherent in the design outweighs the utility of

the design; and (4) the design could be altered to create a safer product. See W. Keeton, Prosser & Keeton on Torts § 99(3) (5th ed. 1984); *Lamkin v. Towner*, 138 Ill. 2d at 530-31. This lack of evidence, however, is understandable since the issue of risk utility was not addressed by the defendant in the motion for summary judgment or by any evidence or argument offered by either party to the trial court. The defendant's summary judgment motion relied only on a consumer expectation analysis.

Contrary to the majority's interpretation of this dissent, I do not conclude that the defendant satisfied its initial burden of production regarding risk utility and, therefore, the burden shifted to the plaintiff. 331 Ill. App. 3d at 900. Rather, this record does not reflect that plaintiff intended to utilize the risk-utility analysis as an alternative method of proving design defect. Neither the defendant nor the plaintiff addressed risk utility. The risk-utility test was raised for the first time on appeal. In the context of risk utility, the plaintiff did not plead a feasible alternative design, nor is she necessarily required to do so in a products design case. *Seward*, 116 Ill. App. 3d at 766, citing *Kerns v. Engelke*, 76 Ill. 2d 154 (1979). Neither the defense nor the plaintiff developed a record based on the risk-utility test because it was not before the trial court by way of defendant's summary judgment motion. The trial court neither considered nor applied the risk-utility test, but granted summary judgment based on the consumer expectation test. The trial court, plaintiff and defendant addressed only that test during the summary judgment proceeding. Nothing in this record would have alerted the defense to the fact that the plaintiff intended to prove design defect by utilizing risk utility as a method of proof. That fact is the source of the confusion in this record.

The consumer expectation test is not the exclusive method of proving design defect; Illinois permits a plaintiff an alternative method of proving design defect under the risk-utility test. *Lamkin v. Towner*, 138 Ill. 2d at 529. The Illinois Supreme Court in *Lamkin* provides the leading case in Illinois both defining and applying the risk-utility and consumer expectation theories. *Lamkin* addressed whether liability could be imposed under negligence or strict products liability for injury to a child who fell through a window screen. *Lamkin* defined the risk-utility and consumer expectation theories in the disjunctive, as alternative methods of proof, not as a two-pronged test as follows:

> "A plaintiff may demonstrate that a product is defective in design, so as to subject a retailer and a manufacturer to strict liability for resulting injuries, *in one of two ways*: (1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably

foreseeable manner *or* (2) by introducing evidence that the product's design proximately caused his injury and defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." (Emphasis added.) *Lamkin v. Towner*, 138 Ill. 2d at 529.

Despite the fact that *Lamkin* clearly describes the risk-utility and consumer expectation tests as alternative methods of proof, appellate and federal cases add to the confusion in this area by referring to these tests as "integrative tests," "dual tests," and "two-pronged tests." At least one unpublished opinion, apparently relied upon by the defendant, found the tests to be mutually exclusive, concluding " 'where the alleged danger is obvious, the risk utility test is not applicable.' " 331 Ill. App. 3d at 907. This area has not only generated confusion, but has increased the burden placed upon defendant at the summary judgment stage of the proceeding. See W. Viscusi, *Wading Through The Muddle of Risk-Utility Analysis*, 39 Am. U. L. Rev. 573 (1990). The majority wisely recognizes the increased burden placed upon defendant regarding summary judgment motions in design defect cases under the risk-utility analysis. "It has been noted by one commentator, and we agree, that the adoption of a risk-utility analysis by a court actually increases the defendant's burden on summary judgment because the defendant must show that, by balancing the product's risk against its utility, the lack of a defect is plain and indisputable. See Am. L. Prod. Liab. § 28:16 (3d rev. ed. 1997)." 331 Ill. App. 3d at 906. The risk-utility test has been recognized as more complex than the consumer expectation test since it "encompasses many more considerations than the relatively simple consumer-expectation test." *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.*, 223 Ill. App. 3d 444, 456 (1991). As demonstrated by this case in the context of summary judgment, application of the risk-utility test can be particularly problematic.

Of particular concern is that, under the approach taken by the majority, the defendant in every design defect case where summary judgment is sought would be required to demonstrate that no material question of fact existed under both the consumer expectation and risk-utility tests in order to prevail on the summary judgment motion regardless of whether the plaintiff intended to utilize risk utility as a method of proof. Such a result is not only fundamentally unfair, but can be a waste of judicial time and resources. Where the plaintiff's method of proving design defect is based on the risk-utility test in the context of a feasible alternative design, disclosure of that fact will help eliminate confusion in resolving summary judgment and prevent wasted time and resources.

It is an oversimplification by the majority to characterize this dissent as standing for the proposition that plaintiff must present evidence of a feasible alternative design in order to survive summary judgment. 331 Ill. App. 3d at 911-12. The absence of a feasible alternative design does not prevent the finder of fact at trial from being persuaded by other evidence that the defect in design rendered the product unreasonably dangerous. *Seward v. Griffin*, 116 Ill. App. 3d 749, 766 (1983). Likewise, at the summary judgment stage of the proceeding, the absence of a feasible alternative design does not prevent the trial court from finding a question of fact based on other evidence as to whether the defect in design rendered the product unreasonably dangerous. What evidence a plaintiff must present in order to survive summary judgment depends upon the issues raised by the defendant's summary judgment motion.

Contrary to the majority's conclusion, it is not only *Lamkin v. Towner*, but a series of other cases, together with *Lamkin*, that provide the basis for my conclusion that the plaintiff, in the context of this case, should be required to disclose whether she is relying on risk utility as a method of proving design defect. I reach that conclusion based on the following: (1) the alternative nature of the risk-utility and consumer expectation tests as methods of proof (*Lamkin*, 138 Ill. 2d at 529); (2) in the context of risk utility, the lack of pleading requirements regarding a feasible alternative design (*Kerns*, 76 Ill. 2d at 163); (3) the confusion surrounding application of the risk-utility test, particularly at the summary judgment stage of the proceeding (331 Ill. App. 3d at 907); (4) the complexity of the risk-utility test (*Harnischfeger*, 223 Ill. App. 3d at 456); and (5) the increased burden placed on defendant at summary judgment by application of the risk-utility test (Am. L. Prod. Liab. § 28:16 (3d rev. ed. 1997)). Such disclosure would help eliminate the confusion demonstrated by this record. At this point the record is silent as to that question. If plaintiff intends to utilize that method of proof, then the defendant should be given the opportunity to move for summary judgment in the context of the risk-utility test.

In resolving such a defense motion for summary judgment based on the risk-utility test, the trial court would decide whether there is a genuine issue as to a material fact. Is there a question of fact as to whether there was a reasonable and safer alternative design at the time of the manufacture of the product? Restatement (Third) of Torts § 2(b) and Comment *f* (1998); G. Wilson, V. Moccio & O. Fallon, *The Future of Products Liability in America*, 27 Wm. Mitchell L. Rev. 85 (2000). The factors considered by the court in resolving that question could include, but not be limited to, the following: (1) evidence that

"the magnitude of the danger outweighs the utility of the product"; (2) evidence the product was "defective in the kind of way that makes it 'unreasonably dangerous' if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product"; and (3) evidence that "harmful consequences in fact from intended and reasonably foreseeable uses resulting from the way the product was designed and marketed up to the time of plaintiff's injury outweighed the benefits in terms of wants, desires, and human needs served by the product." W. Keeton, Prosser & Keeton on Torts § 99(3) (5th ed. 1984); see also Restatement (Second) of Torts §§ 291 through 293 (1965).